## JONES *v.* HILDEBRANT ET AL.

No. 76–5416.   Argued April 26, 1977—Decided June 16, 1977

*David K. Rees* argued the cause for petitioner.   With him on the briefs was *Walter L. Gerash.*

*Wesley H. Doan* argued the cause for respondents.   With him on the brief was *Robert E. Goodwin.**

PER CURIAM.

Petitioner is the mother of a 15-year-old boy who was shot and killed by respondent Hildebrant, while respondent was acting in his capacity as a Denver police officer.   Petitioner brought suit in her own behalf in state court.   Respondent defended on the ground that he shot petitioner's son as a fleeing felon using no more force than was reasonably necessary.   The amended complaint asserted three claims for relief: battery; negligence; and intentional deprivation of federal con-

---

*\*Robert A. Murphy, Richard S. Kohn, Norman J. Chachkin, William E. Caldwell, Vilma S. Martinez, Morris J. Baller,* and *Nathaniel R. Jones* filed a brief for the Lawyers' Committee for Civil Rights Under Law et al. as *amici curiae* urging reversal.

stitutional rights. Although not specifically pleaded, the first two claims were admittedly based on the Colorado wrongful-death statute, Colo. Rev. Stat. Ann. § 13–21–202 (1973),[1] and the third, on 42 U. S. C. § 1983. While petitioner alleged damages of $1,500,000, she stipulated to a reduction of her prayer for relief with respect to the first two claims, since the Colorado wrongful-death statute admittedly limited her maximum recovery to $45,000, Colo. Rev. Stat. Ann. § 13–21–203 (1973). The trial court also ruled that petitioner's § 1983 claim was "merged" into her first claim and, accordingly, dismissed her § 1983 claim. The remaining claims went to the jury, which returned a verdict for $1,500.[2]

On petitioner's appeal, the Supreme Court of Colorado affirmed. 191 Colo. 1, 550 P. 2d 339 (1976). Her petition for certiorari presented a single question for review here:

"Where the black mother of a 15-year-old child who was intentionally shot and killed by a white policeman acting under the color of state law brings a suit in state

---

[1] Section 13–21–202:

"When the death of a person is caused by a wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable, if death had not ensued, shall be liable in an action for damages notwithstanding the death of the party injured."

[2] The jury had been instructed that damages in a wrongful-death action were limited to net pecuniary loss, see *Herbertson* v. *Russell*, 150 Colo. 110, 371 P. 2d 422 (1962). This loss is the financial loss sustained by petitioner as a result of the death of her son, and would include the value of any services that he might have rendered and earnings he might have made while a minor, as well as any support he might have provided after becoming an adult, less the expenses petitioner would have incurred in raising him. The award apparently included, in this case, funeral expenses. The Supreme Court of Colorado upheld the instructions and the award, 191 Colo., at 3 n. 1, 550 P. 2d, at 341 n. 1. These issues, of course, are not before us except as they might bear on petitioner's § 1983 claim.

court pursuant to 42 U. S. C. § 1983, what is the measure of damages? Particularly, can the state measure of damages cancel and displace an action brought pursuant to 42 U. S. C. § 1983?"

We granted certiorari to consider what was thus explicitly presented as a question of whether a State's limitation on damages in a wrongful-death statute would control in an action brought pursuant to § 1983. 429 U. S. 1061 (1977).

The majority opinion in the Supreme Court of Colorado proceeds on the assumption that if the Colorado wrongful-death statute applied to petitioner's claim, her recovery would be limited to $45,000. It held that this limitation did apply even to the one count of petitioner's complaint based on 42 U. S. C. § 1983.

A necessary assumption for this position would seem to be that petitioner was suing to recover damages for injuries under § 1983 which were the same injuries as are covered by the state wrongful-death action. The question presented in the petition for certiorari is at the very least susceptible of that interpretation. But at oral argument, we were advised by counsel for petitioner that her sole claim of constitutional deprivation was not one of pecuniary loss resulting from her *son's* wrongful death, such as would be covered by the wrongful-death statute, but one based on *her* personal liberty. Her claim was described at oral argument as a constitutional right to raise her child without interference from the State; it has nothing to do with an action for "wrongful death" as defined by the state law. Tr. of Oral Arg. 4–5; see also *id.,* at 8–13.

An action for wrongful death, under Colorado law, is an action which may be brought by certain named survivors of a decedent who sustain a direct pecuniary loss upon the death of the decedent. It is "classified as a property tort action and cannot be classified as a tort action 'for injuries done to the person,' " *Fish* v. *Liley,* 120 Colo. 156, 163, 208 P. 2d 930,

933 (1949).[3]   Petitioner, however, articulates here a quite different constitutional claim which does not fit into the Colorado wrongful-death mold.   While petitioner's constitutional claim is based on an alleged deprivation of her own rights, and not on deprivation of those of her son's,[4] the asserted deprivation is not for any "property loss," but, rather, for the right of a child's mother to raise the child as she sees fit.[5]

This claim was not set forth in the complaint,[6] was not even hinted at in petitioner's briefs to the Supreme Court of Colorado, and is only casually referred to in the opinion of that court.   The majority opinion held that insofar as a claim for actual pecuniary loss was a property right conferred upon petitioner by the State's wrongful-death statute, the damages recoverable under it were limited by the terms of

---

[3] See n. 2, *supra*.

[4] Petitioner explicitly acknowledged at oral argument that she had not brought a claim for vindication of her son's rights; in essence, an action on his behalf. See Tr. of Oral Arg. 6, 17–18, 20.   This is clear, as well, from the manner in which the complaint is drafted, as well as the parties' perception that the closest available state statute is the Colorado wrongful-death statute, rather than the Colorado survivorship statute, Colo. Rev. Stat. Ann. § 13–20–101 (1973).   See Tr. of Oral Arg. 17–18, 20.   See generally C. McCormick, Law of Damages 336 (1935); 2 F. Harper & F. James, The Law of Torts §§ 24.1–24.3 (1956).   Petitioner sued individually as the mother of the decedent and not as the administratrix of the decedent's estate.

[5] Petitioner apparently relies on *Meyer* v. *Nebraska*, 262 U. S. 390 (1923), and its progeny as the basis for her asserted constitutional deprivation.   As articulated at oral argument, petitioner's contention appears to be: "[T]his Court has held on several occasions that a parent has a constitutional right to raise their child, and that that child cannot be taken from them without the due process of law."   Tr. of Oral Arg. 4–5.

[6] Her complaint alleged that *she* was deprived of

"a. Her child's right to life;

"b. The right to her child's freedom from physical abuse, coercion, intimidation, and physical death; and

"c. Her right to her children's equal protection of the laws."   App. 3.

Nowhere does she allege her asserted constitutional right to raise her child.

that statute. The majority opinion also refers in passing to a constitutional liberty right in petitioner herself, but its principal thrust is that petitioner's liberty claims, as presented to that court, are "really those of her son," and not claims personal to her.[7] This discussion, which occurs subsequent to that portion of the opinion in which the Supreme Court of Colorado concluded that state wrongful-death remedies were incorporated into § 1983 to vindicate civil rights violations "that result in death," does not intimate that similar limitations would exist in a § 1983 action where the alleged deprivation was that of liberty to a living plaintiff suing for a wrong done to her. We do not know how the Supreme Court of Colorado would have ruled on the damages limitation question had it found the § 1983 claim to be that of the deprivation of the mother's right to raise the child.

We have here then a shift in the posture of the case such that the question presented in the petition for certiorari is all but mooted by petitioner's oral argument. The question of whether a limitation on recovery of damages imposed by a state wrongful-death statute may be applied where death is said to have resulted from a violation of 42 U. S. C. § 1983 would appear to make sense only where the § 1983 damages claim is based upon the same injuries.[8] This is the assump-

---

[7] The court was referring to the assertions in the complaint, quoted in n. 6, *supra*. It then raised, and rejected, another argument in the following passage:

"Furthermore, the state did not directly attempt to restrict her own personal decisions relating to procreation, contraception, and child-rearing which are involved in *Griswold* v. *Connecticut,* 381 U. S. 479 . . . (1965), and *Meyer* v. *Nebraska,* 262 U. S. 390 . . . (1923). Although the death of a family member represents a loss to her, we, nonetheless, are of the opinion that § 1983 was not designed to compensate for these collateral losses resulting from injuries to others." 191 Colo., at 9, 550 P. 2d, at 345.

[8] Petitioner rejects the view that the claims are based on the same injuries: "The key is that the remedy . . . is for the deprivation of

tion on which the Supreme Court of Colorado proceeded in discussing whether the § 1983 claim "merged" in the wrongful-death claim. The court does not intimate, or decide, that a § 1983 claim based on an alleged deprivation such as petitioner asserts here—if the claim were otherwise cognizable—would require remedial assistance from the state wrongful-death statute or that recovery on such a claim would be limited by that statute.

Petitioner's question presented assumes that the underlying constitutional violation necessary to support a § 1983 claim on her behalf is undisputed, and that the only question upon which petitioner takes issue with the majority of the Supreme Court of Colorado is the limitation on the amount of recovery. But it would seem possible, if not probable, that if petitioner had presented to the Supreme Court of Colorado the same claim she presented here in oral argument, that court's opinion would not have turned on the application of the state wrongful-death statute as a limitation on recovery of damages, since the underlying § 1983 claim—deprivation of a right to raise children—is not at all the same underlying claim for which the wrongful-death action provides recompense. Whatever the merits of her constitutional liberty claim in her own right, a question on which we do not intimate an opinion, it would not seem logically to be subject to a damages limitation contained in the statute permitting survivors to recover for wrongs done to a property interest of theirs. In presenting to this Court in her petition for certiorari solely a damages issue of this nature, petitioner has wholly pretermitted the underlying question of whether she has been deprived of any constitutional liberty interest as a result of respondent's shooting of her son.

In sum, the damages question which petitioner presents in her petition for certiorari is only the tip of the iceberg.

civil rights—not for wrongful death." Reply Brief for Plaintiff-Appellant in the Supreme Court of Colorado 7.

The question of whether she was deprived of a constitutional liberty interest of her own was neither alleged in her complaint in the Colorado trial court, presented in the petition for certiorari in this Court, nor fairly subsumed in the question that was presented. See this Court's Rule 23 (1)(c). The writ of certiorari is therefore dismissed as improvidently granted. *Belcher* v. *Stengel,* 429 U. S. 118 (1976).

*It is so ordered.*

MR. JUSTICE WHITE, with whom MR. JUSTICE BRENNAN and MR. JUSTICE MARSHALL join, dissenting.

Physical abuses by police under color of state law may in some circumstances constitute a constitutional deprivation giving rise to criminal liability under the civil rights laws, even if the abuses result in the death of the victim, *Screws* v. *United States,* 325 U. S. 91 (1945); and if the victim survives such abuses, it is now clear that he may recover damages under 42 U. S. C. § 1983 for the injuries that he has sustained. See *Monroe* v. *Pape,* 365 U. S. 167 (1961); *Johnson* v. *Glick,* 481 F. 2d 1028 (CA2), cert. denied *sub nom. John* v. *Johnson,* 414 U. S. 1033 (1973); *Howell* v. *Cataldi,* 464 F. 2d 272 (CA3 1972); *Tolbert* v. *Bragan,* 451 F. 2d 1020 (CA5 1971); *Jenkins* v. *Averett,* 424 F. 2d 1228 (CA4 1970); *Collum* v. *Butler,* 421 F. 2d 1257 (CA7 1970); *Allison* v. *California Adult Authority,* 419 F. 2d 822 (CA9 1969). There remains the question whether, independently or in conjunction with state law, § 1983 affords parents a cause of action for a wrongful killing of their child by a state law enforcement officer and, if it does, the further question as to the measure of damages in such case.

This Court has never addressed these issues.[1] Beginning

---

[1] At least one case in this Court has involved such an action. In *Scheuer* v. *Rhodes,* 416 U. S. 232 (1974), personal representatives of students killed in the 1970 slayings at Kent State University brought a § 1983 action alleging the wrongful killing of the victims. The Court held

with *Brazier* v. *Cherry,* 293 F. 2d 401 (CA5), cert. denied, 368 U. S. 921 (1961), however, the Courts of Appeals have permitted survivor suits under § 1983, at least where such actions are maintainable under state law. See, *e. g., Spence* v. *Staras,* 507 F. 2d 554 (CA7 1974); *Hall* v. *Wooten,* 506 F. 2d 564 (CA6 1974). See also *Hampton* v. *Chicago,* 484 F. 2d 602, 607 (CA7 1973) (Stevens, J.), cert. denied, 415 U. S. 917 (1974). In *Brazier* the Fifth Circuit held that an action by a widow against a police officer for the wrongful killing of her husband was maintainable under § 1983. There the Court of Appeals found that in enacting 42 U. S. C. § 1988, "Congress adopted as federal law the currently effective state law on the general right of survival." 293 F. 2d, at 405. The same court has now ruled that a § 1983 action survives the death of the victim, despite state law to the contrary. *Shaw* v. *Garrison,* 545 F. 2d 980 (1977).

It is thus apparent that the availability of § 1983 in wrong-ful-death actions is a recurring issue and that it is far from evident that the Colorado Supreme Court was correct in ruling that a § 1983 death action is tied to state law. It is clear that by enacting § 1983, Congress intended to create a federal right of action separate and independent from any remedies afforded under state law. See *Monroe* v. *Pape, supra.* State law may be relevant where a trial court is seek-ing to fix a remedy under § 1983, cf. *Moor* v. *County of Alameda,* 411 U. S. 693, 702–703 (1973), but it is by no means clear that state law may serve as a limitation on recovery where the remedy provided under state law is inadequate to implement the purposes of § 1983. Thus, "both federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal statutes. Cf. *Brazier* v.

that state officials were not absolutely immune from such suits. Although the question whether the personal representatives' action could be main-tained under § 1983 was not before the Court, it did not disapprove of such actions in remanding the case to the lower courts.

*Cherry,* 293 F. 2d 401. The rule of damages, whether drawn from federal or state sources, is a federal rule responsive to the need whenever a federal right is impaired." *Sullivan* v. *Little Hunting Park,* 396 U. S. 229, 240 (1969). The Courts of Appeals have taken a similar approach by allowing recovery of punitive damages in suits brought under § 1983 even if state law would not have permitted them. See *Caperci* v. *Huntoon,* 397 F. 2d 799 (CA1), cert. denied, 393 U. S. 940 (1968); *Basista* v. *Weir,* 340 F. 2d 74, 84–88 (CA3 1965). See also *Spence* v. *Staras, supra,* at 558; *Gill* v. *Manuel,* 488 F. 2d 799, 801–802 (CA9 1973); Annot., 14 A. L. R. Fed. 608 (1973).

Despite the importance of the question whether § 1983 is available when a state officer wrongfully takes a life, the Court dismisses the writ of certiorari as improvidently granted because in its view the critical issues are not properly before us. I disagree.

Petitioner included in her complaint filed in the trial court a claim for relief under 42 U. S. C. § 1983.[2] That cause of action was dismissed on the ground that it was merged in the state wrongful-death action also included in the complaint. The Colorado Supreme Court rejected petitioner's claim that "her § 1983 claim should not have been dismissed," 191 Colo. 1, 5, 550 P. 2d 339, 342 (1976), and in so doing rejected each of the "four distinct theories [advanced] to support her" § 1983 cause of action. 191 Colo., at 5, 550 P. 2d, at 342.

---

[2] Petitioner's first two claims for relief were grounded on state law. The third claim for relief stated:

"During all times mentioned in this Complaint, Douglas Hildebrant while acting under color of law, intentionally deprived the Plaintiff of her rights, security and liberty secured to her by the Constitution of the United States, including but not limited to:

"a. Her child's right to life;

"b. The right to her child's freedom from physical abuse, coercion, intimidation, and physical death; and

"c. Her right to her children's equal protection of the laws." App. 3.

One of petitioner's arguments was that §§ 1983 and 1988 together permit suits under § 1983 in reliance on state wrongful-death statutes but authorize recovery of damages free from the limitations of state law. The Colorado Supreme Court agreed that "§ 1988 permits the incorporation of the states' non-abatement statutes and wrongful death statutes into § 1983 actions in order to effectually implement the policies of that legislation," 191 Colo., at 6, 550 P. 2d, at 343–344 (footnotes omitted), and that in a federal suit "Colorado's wrongful death remedy would be engrafted into a § 1983 action." *Id.*, at 7, 550 P. 2d, at 344. But it disagreed with petitioner on the question of remedy, holding that any such § 1983 action was subject to the damages limitations of state law—here the Colorado rule limiting recovery for wrongful death to direct pecuniary loss to the survivors; and because suit was brought in state court, the § 1983 case merged with the state wrongful-death action and was properly dismissed. Chief Justice Pringle and Justice Groves dissented, saying that they did not "believe that Colorado's judicial limitation of net pecuniary loss as a measure of damages for wrongful death applies to actions founded upon 42 U. S. C. § 1983 . . . ." 191 Colo., at 9, 550 P. 2d, at 345–346.

In the course of arriving at this conclusion, the Colorado Supreme Court expressly rejected the other grounds offered by petitioner to sustain her § 1983 claim. First, because the Colorado statute permitted petitioner to bring her suit, she was not deprived of any civil right "without due process of law." 191 Colo., at 6, 550 P. 2d, at 343. Second, the Colorado court rejected as contrary to congressional intent, the "theory . . . that a federal wrongful death remedy impliedly exists in § 1983, independent of state wrongful death remedies." *Id.*, at 8, 550 P. 2d, at 345.[3]

---

[3] The Colorado Supreme Court was emphatic: "Though the United States Supreme Court has ruled that federal wrongful death remedies impliedly exist in some areas of the law, we do not believe that such

Petitioner also claimed that she was entitled to a "separate recovery under her § 1983 claim" because "she was deprived of her own constitutional rights" in that "her child's right to life, his right to freedom from physical abuse and intimidation, and his right to equal protection of the laws were violated." *Ibid.* In rejecting this claim, the court held that "[t]hese deprivations . . . are really those of her son" and that a § 1983 action did not lie for injuries to another. Petitioner could not "sue in her own right for the deprivations of her son's rights," such as his right to life. *Ibid.* The Colorado court thus treated petitioner's claim as a survivor's suit based on the deceased's cause of action, holding that § 1983 does not provide for such an action independently of state law.

Finally, the Colorado Supreme Court expressly rejected any notion that the State "directly attempt[ed] to restrict [petitioner's] own personal decisions relating to procreation, contraception, and child-rearing which are involved in *Griswold* v. *Connecticut,* 381 U. S. 479 . . . (1965), and *Meyer* v. *Nebraska,* 262 U. S. 390 . . . (1923)." 191 Colo., at 9, 550 P. 2d, at 345. While conceding that "the death of a family member represents a loss" to petitioner, the court held that the State had not interfered with her right to child rearing, and "§ 1983 was not designed to compensate for these collateral losses resulting from injuries to others." *Ibid.* Accordingly, the rights of parents were sufficiently vindicated by the state statutory recovery of direct pecuniary losses resulting from the death of their children.

It is obvious from the proceedings in the Colorado courts that the dismissal of petitioner's § 1983 claim and the associ-

a remedy exists with § 1983 claims. This belief is based on the perceived Congressional intent not to pre-empt the states' carefully wrought wrongful death remedies, the adequacy in a death case of the state remedies to vindicate a civil rights violation, and the overwhelming acceptance of such state remedies in the federal courts." 191 Colo., at 8, 550 P. 2d, at 345 (footnotes omitted).

ated damages limitation ruling were unsuccessfully challenged in the Colorado Supreme Court on the grounds just mentioned. It also seems to me that these grounds were preserved by the petition for certiorari, which we granted and which presented the following questions:

> "Where the black mother of a 15-year-old child who was intentionally shot and killed by a white policeman acting under the color of state law brings a suit in state court pursuant to 42 U. S. C. § 1983, what is the measure of damages? Particularly, can the state measure of damages cancel and displace an action brought pursuant to 42 U. S. C. § 1983?"

The questions "what is the measure of damages" in a § 1983 suit and "can a state measure of damages cancel and displace an action brought pursuant to § 1983" fairly pose the correctness of the Colorado Supreme Court rulings that (1) no § 1983 action exists independently of state law; (2) a survivor may not sue under § 1983 for injuries suffered by the deceased; and (3) the damages recoverable under § 1983 are limited by Colorado law to direct pecuniary loss and do not reach "collateral" injuries. These issues were addressed directly by the Colorado Supreme Court, and I doubt that that court misunderstood the scope of the litigation before it or reached and decided issues not fairly presented by the appeal.

Nor do I think that the oral argument, even when read in the majority's common-law pleading style, ineluctably supports any conclusion that petitioner has abandoned any of these claims. At oral argument, petitioner's claim as a parent was articulated several times: "a right to not have her child taken"; she was deprived of the "liberty to raise children"; she had the right "[t]o raise her child"; and the "constitutional violation was the infringement of her rights as a parent." Tr. of Oral Arg. 8–10. In light of these statements and similar ones throughout the oral argument it cannot

be said that petitioner has abandoned her claim, expressly rejected by the Colorado Supreme Court, that § 1983 affords a remedy to petitioner in her capacity as a parent wholly independent of state law.

Similarly, petitioner's counsel made his view clear that even if the § 1983 action for the death of petitioner's child was dependent on state law, it was error to restrict petitioner's recovery to her direct pecuniary losses pursuant to the Colorado rule. Recovery should include, it was urged, damages for loss of a parent's own "civil rights" as well as punitive damages for the wrongful killing. Tr. of Oral Arg. 45.

Finally, it appears to me that petitioner has preserved her claim that § 1983 affords a survivor's action for the invasion of her child's right to life. Although petitioner's counsel seems to have characterized his claims in the state courts as being related solely to the mother's rights as a parent, the Colorado Supreme Court understood them to consist in part of claims on behalf of the son and, as I have indicated, expressly held these claims not cognizable under § 1983. 191 Colo., at 8, 550 P. 2d, at 345. At oral argument, counsel for petitioner conceded that he had not pressed his client's survivorship claim, apparently because he felt constrained by certain lower court opinions, since reversed or overruled, to articulate petitioner's claims in the Colorado courts in terms of the mother's rights alone. But he made it clear that "in hindsight" he would assert the survivorship claim, citing *Shaw* v. *Garrison*, 545 F. 2d 980 (CA5 1977), for the proposition that independently of state law a § 1983 action survives the death of the victim. Tr. of Oral Arg. 17–18, 20, 22. Because the Colorado Supreme Court understood petitioner's submission as including a survivorship claim based on injury to the son and because the issue is fairly presented by petitioner's petition for certiorari, it is hypertechnical to hold that the survivorship issue is not here. Of course, the Court is not bound by concessions of counsel in oral argument as to whether a legal issue is open

in this Court. Cf. *Oregon ex rel. State Land Board* v. *Corvallis Sand & Gravel Co.,* 429 U. S. 363, 368 n. 3 (1977).

In any event, in light of the record, I am at a loss to understand the basis for dismissing the writ of certiorari with respect to the other questions expressly raised or fairly subsumed in the questions presented in the petition. These issues are important and we should decide them. I respectfully dissent from the judgment of dismissal.