Jane C. LYNN, Plaintiff,

v.

CITY OF NEW ORLEANS DEPARTMENT OF POLICE, Clay Clement, Defendants.

Civ. A. No. 79–3226.

United States District Court,
E.D. Louisiana.

May 23, 1983.

Nell I. Lipscomb, New Orleans, La., for plaintiff.

Thomas W. Milliner, New Orleans, La., for defendants.

## MEMORANDUM OPINION

CASSIBRY, District Judge:

The plaintiff Jane C. Lynn seeks redress from the City of New Orleans, Louisiana and Clay Clement, a police officer of the New Orleans Police Department, under the provisions of Title 42, United States Code, Sections 1983 and 1985 for alleged violations of her rights under Amendments I, IV and XIV of the Constitution of the United States. In her complaint she charges that the conduct of Officer Clement in the investigation of a hit-and-run accident violated her constitutional rights to freedom of assembly, freedom of association, due process, protection from unwarranted search and seizure and from unlawful arrest. She prays for compensatory damages, punitive damages and attorney fees.

The events giving rise to this controversy occurred in New Orleans on the evening of Sunday, August 20, 1978. Barbara Robert, the black driver of a Ford Mustang, was involved in an accident at the intersection of Crowder Road and Lake Forest Boulevard about 8:15 P.M. with a Chevrolet pickup truck driven by a white male in which another white male and a white female were passengers. All occupants of the vehicles got out and inspected the fender damage to Robert's car. The white female walked to a nearby apartment. When Robert went to a telephone to summon police, the males drove away from the scene of the accident. Robert took down the license number of the truck.

Officer Clement responded to the emergency hit-and-run call and ascertained that the truck was owned by John Tucker, 6702 Elm Street, Apartment No. 31, the apartment the white female had entered. Barbara Robert accompanied Officer Clement

to the apartment at approximately 8:30 P.M. Loud music and persons talking could be heard. Inside the apartment were four persons, the plaintiff Jane Lynn, who resided in an apartment nearby, her date Stephen DeFerrari, Robert Grush, who resided in the apartment, and his date Susan Villemeur. They had spent the day sailing, and were congregating at the apartment for a barbecue. All of them had been drinking beer or wine or both during the day. Grush and Villemeur had been drinking more than Lynn and DeFerrari.

Lynn had made a previous trip to the apartment that evening. After the sail she and DeFerrari returned to her apartment about 7:30 P.M. to find that she had no electrical power. She went to the apartment shared by Grush and John Tucker and found Tucker there drunk. Whereupon she left to try to find out the cause of her power trouble. She returned with DeFerrari to Grush's apartment about 8:15 P.M. and Grush was there. Grush told them about an accident, but made no mention of leaving the scene. She had sat down with a beer when she heard a loud banging at the door.

No response was made to Officer Clement's first knock on the door. He knocked again and someone inside asked who was there. He identified himself as a police officer, and still no one came to the door. Grush looked out and saw Barbara Robert. Officer Clement then went to the rear of the apartment and knocked. Again there was no response and he called for a back-up unit. He returned to the front and knocked again. The back-up unit arrived while Officer Clement was knocking. Grush came to the door, but at first would not admit him, although he told Grush that he was investigating a hit-and-run offense. Grush finally admitted him, demanding a search warrant, and Jane Lynn joined in. Officer Clement was confronted by an antagonistic clamor and four people who had been drinking most of the day. He placed everyone under arrest for interfering with his investigation.

Robert was brought into the apartment and identified Grush and Villemeur as persons in the truck, and she was allowed to leave. John Tucker then arrived and admitted ownership of the truck, identified Grush as the driver, and admitted that they had left the scene of the accident. He was placed under arrest.

All of those arrested were taken out to the parking lot of the apartment complex while the paperwork was being prepared in connection with the arrests. Before they left the apartment Lynn approached Officer Clement to protest her arrest and he took her by the arm and escorted her to the lot. She was dressed in a bathing suit and shorts. He refused her request to change her attire and pick up some personal effects.

From the time of Officer Clement's arrival at the apartment until the occupants were taken to the lot was about 10 or 20 minutes. He was knocking for about five minutes before he was admitted. The officers and the arrestees were in the parking lot for 40 minutes to an hour, and the officers then drove the arrested persons to the police station and jail. After some difficulty Lynn was successful in finding someone to put up $100.00 for her bail. She was kept in a small room in the police station until her release at 10:55 P.M., and she left at 11:25 P.M. She spent no time in the jail.

■ For recovery under 42 U.S.C. § 1983 the conduct complained of must have been committed by a person acting under color of state law, and the conduct must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States.[1]

It is not disputed that Clay Clement as an officer of the New Orleans Police Depart-

1. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Section 1983 pro-  vides:

ment was acting under color of state law when he investigated the hit-and-run automobile accident.

The plaintiff Jane Lynn contends that she has proved that her arrest was made without probable cause and was therefore unlawful, that excessive force was used in effecting the arrest, and that she was subjected to the humiliation of being detained in only a bathing suit and shorts, and thus that she has proved she was deprived of liberty in violation of the First Amendment and without due process of law under the Fourteenth Amendment.[2]

The defendants urge the court to hold that under *Parratt v. Taylor,* supra note 1, there has been no violation of the plaintiff's procedural due process rights because she has an adequate remedy for her alleged grievances under the tort law of Louisiana relating to false arrest, and to dismiss the Section 1983 claim. In *Parratt* the Supreme Court held that the negligent deprivation of an individual's property interest is not a violation of the due process clause of the Fourteenth Amendment, provided the

state makes available an adequate post-deprivation remedy. That case did not involve a liberty interest, and the extension of *Parratt* to a liberty interest has been foreclosed in this circuit by the decision of the Fifth Circuit Court of Appeals in *Brewer v. Blackwell,* 692 F.2d 387 (1982).[3]

### The False Arrest Claim

■ Jane Lynn was told by Officer Clement that she was under arrest upon his entry to the apartment or shortly thereafter. She was charged with interfering with the police and with resisting arrest under New Orleans City Code, Section 42–81.[4] In Louisiana an arrest for a misdemeanor may be made without a warrant if the officer has reasonable cause to believe that a misdemeanor has been committed in his presence. *Myers v. Edwards,* 256 So.2d 337 (La.App. 1st Cir.1971).

■ Officer Clement was investigating a serious offense—a hit-and-run—and he was met with antagonism and defiance of his purpose after having made his purpose known to all, including (by her own admission) Jane Lynn. He was faced with per-

---

"Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. The allegation of forcible entry was not proved which explains why the plaintiff no longer contends for any Fourth Amendment violation.

3. The Ninth Circuit extended *Parratt* to a liberty interest in *Rutledge v. Arizona Board of Regents,* 660 F.2d 1345 (1981). However, in *Wakinekona v. Olim,* 664 F.2d 708, 714 (9th Cir.1981), rev'd on other grounds, —— U.S. ——, 103 S.Ct. 1741, 75 L.Ed.2d 813, in the opinion denying petition for rehearing and rehearing en banc, a suggestion that *Parratt* would apply to a liberty interest was rejected. The *Parratt* principle was applied to a liberty interest without mention of the case in *Johnson v. Miller,* 680 F.2d 39 (7th Cir.1982).

4. Section 42–81 provides as follows:

"It shall be unlawful for any person to commit the crime of resisting an officer as hereinafter defined.

'Resisting an officer' is the intentional opposition or resistance to, or obstruction of, an individual acting in his official capacity and authorized by law to make a lawful arrest or seizure of property, or to serve any lawful process or court order, when the offender knows or has reason to know that the person arresting, seizing property, or serving process is acting in his official capacity.

The phrase 'obstruction of' as used herein, shall in addition to its common meaning, signification and connotation, include the following acts:

a) Flight by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest;

b) Any violence toward or any resistance or opposition to the arresting officer after the arrested party is actually placed under arrest and before he is incarcerated in jail;

c) Refusal by the arrested party to give his name and make his identity known to the arresting officer."

sons who had been drinking and, as he evaluated the situation, "a drunk in an apartment resenting police is a different drunk to a Mardi Gras drunk." According to him, he arrested Jane Lynn because in his words "she would not shut her mouth" and permit him to conduct his investigation.[5]

I conclude that under the circumstances Officer Clement had probable cause to arrest Jane Lynn for obstructing his investigation and resisting arrest. Knowing nothing about the hit-and-run offense, she apparently considers that her First Amendment rights permitted her to continue protesting his presence and her arrest. She exceeded her First Amendment rights in this case.

### The Excessive Force Claim

When Jane Lynn approached Officer Clement to protest her arrest after the persons in the truck had been identified, he was not unreasonable when he used the minimal force exerted by taking her arm to remove her from the apartment. She insists that she would have gone to the police car "under her own power", if she had been directed to do so. Under the circumstances of her antagonistic attitude throughout this incident, Officer Clement cannot be faulted for concluding at the time that she would not go willingly.

### The Humiliation Claim

This claim cannot be sustained. Jane Lynn was clad in a bathing suit and shorts which she had apparently worn in public most of the day, and was intending to wear for the gathering for the barbecue. Officer Clement did not act unreasonably when he did not permit her to remove herself to change clothes and pick up her personal effects, including money for posting bond.

The Clerk shall prepare judgment in favor of defendants, dismissing the claim of plaintiff.

### ADDENDA

In the event a contrary decision is reached on appeal as to the validity of the plaintiff's Section 1983 claim, I make the following determinations:

### I.

### QUANTUM OF COMPENSATORY DAMAGES

I find that $2,000.00 would adequately compensate the plaintiff for the damages sustained in this case. The entire incident lasted less than three hours. According to her superior at Becton-Dickinson Company, which employed her as a sales representative, she missed two or three days at work as a result of the arrest, but her loss of income was speculative. Her job was to call on laboratories in her territory which extended from Lake Charles, Louisiana to Panama City, Florida to Jackson, Mississippi. She was agitated and in a state of disbelief after the arrest and experienced some crying spells. The manner of the arrest and the treatment of her after the arrest do not offer circumstances egregious enough to warrant a large damage award in this case.

### II.

### PUNITIVE DAMAGES

The plaintiff is not entitled to punitive damages. The Supreme Court recently announced the standard for awarding punitive damages in a Section 1983 case, *Smith v. Wade,* —— U.S. ——, 103 S.Ct. 1625, 75 L.Ed.2d 632. A proper case for an award of punitive damages is one in which it is

---

**5.** He also testified that she cursed him and threatened to get his job. She testified that he was cursing during his investigation. Each denies the other's accusations. The neutral witness Barbara Robert did not hear anyone curse Officer Clement. She heard him speaking in a normal tone at all times, and he exhibited no inappropriate demeanor while she was present.

# 766

shown that the defendant's conduct was motivated by evil motive or intent, or that it involved reckless or callous indifference to the federally protected rights of others. The court pointed out that punitive damages are awarded " 'to punish [the defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future.' Restatement (Second) of Torts § 908(1) (1977). The focus is on the character of the tortfeasor's conduct— whether it is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards. * * * " *Smith v. Wade,* supra, at p. ——, 103 S.Ct. at p. 1639. Officer Clement's conduct cannot be viewed as reckless or as showing a callous indifference to the federally protected rights of others.

### III.

### ATTORNEY FEE

If the plaintiff were held to be entitled to recover compensatory damages under Section 1983, I would exercise my discretion under 42 U.S.C. § 1988 to allow her a reasonable attorney fee as part of the costs.

### IV.

### LIABILITY OF THE CITY OF NEW ORLEANS

A municipality cannot be held liable in a Section 1983 action for the torts of its employees under the doctrine of respondeat superior. *Monell v. Department of Social Services,* 436 U.S. 658 (1978). It is liable for its employees' torts only when the employee acts pursuant to municipal direction or authorization or when the act carries out municipal policy or custom.

The plaintiff introduced the file of defendant in the Internal Affairs Division of the police department to demonstrate that Officer Clement had a pattern of official misconduct towards the citizenry. She contends that the City should be liable for its

failure to properly supervise his conduct. The evidence introduced does not show that the City either tacitly or explicitly encouraged the violation of citizen's federally protected rights. Certainly the evidence does not show that Officer Clement had a pattern of false arrest complaints or that the City condoned false arrests by Officer Clement.

Even in a proper case to hold a municipality for the tort of its employee under Section 1983, an award of punitive damages is not appropriate. *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).