Mrs. Rena DAY

v.

**David LEA, Individually, as Deputy Sheriff of the Parish of St. Helena, and R.D. Bridges, Individually.**

Civ. A. No. 81–827–A.

United States District Court, M.D. Louisiana.

May 11, 1984.

J. Michael LeJeune, Baton Rouge, La., for plaintiff.

Ben W. Lightfoot, Baton Rouge, La., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN V. PARKER, Chief Judge.

In October 1980 plaintiff, Mrs. Rena Day, a sixty-four year old Caucasian woman operated a small grocery store in the rural St. Helena Parish community of Chipola. At some time during the day of October 7, 1980, the defendant, David Lea, Caucasian, a deputy sheriff for four years, stopped by Mrs. Day's store and inquired of her as to whether she had seen Mrs. Juanita Porter, a Negro woman who occasionally worked at the store. Upon Mrs. Day's negative response, Deputy Lea departed, stating that he would check at another place but would return. All three of these individuals were longtime residents of St. Helena Parish and were well-known to each other. During the afternoon of that day, Mrs. Porter came into the store and visited with Mrs. Day who told her to help herself to a "cold drink." Mrs. Porter secured a bottle of strawberry drink and stepped out in front of the store to drink her strawberry pop and to visit with her sister-in-law, Catherine Glass, who was

seated in an automobile parked near the front of the store. Deputy Lea drove up at this time in his sheriff's vehicle and, without getting out of the car, informed Mrs. Porter that she was to bring her juvenile son to the courthouse in Greensburg on the following day. When Mrs. Porter inquired as to the reason for this request, Deputy Lea replied that the boy, Johnny, was suspected of cutting automobile tires at school.

Up to this point, all the testimony agrees but here it bifurcates.

Deputy Lea claims that Mrs. Porter went to "cussin'" and stated that her boy was not guilty and that she would not bring him to the courthouse, that Mrs. Porter proceeded to throw the strawberry drink upon him from a "styrofoam" cup, and that she started running down the road. According to the deputy, he cut her off with his vehicle, dismounted, told her she was under arrest[1] and "got her by the arm," whereupon Mrs. Porter, declaring that nobody was going to arrest her, broke loose and ran into Mrs. Day's store.

Mrs. Porter, her sister-in-law, Ms. Glass, and Mrs. Day all testified that Mrs. Porter's strawberry drink was in a bottle only, no "styrofoam" cup. I believe them.

Mrs. Porter testified that, upon hearing Deputy Lea's request, she informed him that she would go to the school house immediately, get her son, and deliver him to the courthouse and that she started running up the road toward her automobile, parked at her sister's house nearby. According to Mrs. Porter, Deputy Lea then pulled his vehicle up beside her, got out of the vehicle, told her to come with him in his car, grabbed her arm and twisted it, thereby spilling her strawberry drink, some of which splashed upon the deputy. Mrs. Porter twisted away from the deputy and ran back to the store. I believe her.

Mrs. Porter rushed into the store, and both Mrs. Day and Reverend James Miller,

---

**1.** At no time has the defendant ever indicated for what reason Mrs. Porter was "under arrest" or what law she allegedly violated.

who was present in the store, heard her exclaim, "Miss Rena, please make Mr. David leave me alone. I don't want to go with him in his car" (or words to that effect). Mrs. Day was behind the counter near the cash register, and Mrs. Porter ran behind the counter which was four and a half to six feet long and was positioned against the walls so that there was only one way in or out. As Mrs. Day was telling Mrs. Porter to calm down, the red-faced deputy, admittedly "upset," plunged through the door, "slapjack" (a leather-bound metal weight) in hand, raced behind the counter, and began to reign blows with his "slapjack" upon Mrs. Porter's arms and head. After the deputy had struck Mrs. Porter several times he yelled, "I told you to get in the car." Mrs. Porter attempted to twist away but did not attack Deputy Lea or offer any physical resistance. Mrs. Day was imprisoned behind the counter with Mrs. Porter who was so close to her that, according to Reverend Miller, had the deputy missed Mrs. Porter with the "slapjack" it would have hit Mrs. Day. In the scuffle, Mrs. Day stumbled or was pushed over a stool, hit her head and neck, but somehow managed to clamber over the counter to escape. The ruckus ended when Mrs. Porter agreed to accompany the deputy in his car to the courthouse. Deputy Lea then called for assistance and ten to fifteen minutes later two more deputies, a state trooper and a juvenile officer all arrived, which was probably more "law" than Mrs. Day's store had seen in many years.

Sheriff R.D. Bridges was sheriff of St. Helena Parish for some thirty-six years. He hired Deputy Lea as a deputy, and Lea was given at least minimum on-the-job training as a deputy sheriff. Sheriff Bridges was not aware that Lea had had an altercation at Mrs. Day's store until after the entire affair was concluded. There is no evidence indicating that the sheriff personally participated in Lea's activities on October 7, 1980 at Mrs. Day's store in Chipola.

Mrs. Day's neck, arm and hand continued to pain her and on November 6, 1980, she communicated with her family physician in Baton Rouge whom she saw on November 10, 1980. Physical examination revealed that she was tender in the posterior neck area with some muscle spasm and a twenty to twenty-five percent limitation of motion in the neck. The physician's impression was severe posterior cervical strain. Some degenerative arthritic changes were shown by X-ray at the C–5–6 and the C–6–7 levels. Conservative treatment, cervical collar and traction, was prescribed with no improvement in the patient's condition. On December 23, 1980, she was referred to a neurosurgeon who saw her on January 5, 1981. His diagnosis was cervical spondylosis, with some nerve root compromise aggravated by her injury in the fracas at the store. Conservative treatment, cervical collar and cervical traction at home, was again prescribed, with some improvement of neck symptoms but none of the pain in her arm, at first. Her last visit to the neurosurgeon was June 5, 1981 at which time she was asymptiomatic while wearing the collar. The neurosurgeon's prognosis was that she would continue to improve and would have an uneventful recovery with no permanent disability. Mrs. Day testified that she still had occasional pain at the time of trial and that she still uses traction from time to time, as well as Tylenol for pain from time to time.

Mrs. Day brings this action to recover damages from Deputy Lea, Sheriff Bridges and their insurer.

Plaintiff asserts jurisdiction under 28 U.S.C. § 1343 for violation of her constitutional rights under 42 U.S.C. § 1983. She also asserts pendent state law claims. I find that plaintiff is entitled to recover under § 1983, thus I do not consider the pendent state claims.

■ 42 U.S.C. § 1983 grants a cause of action for damages to any person who under color of state law is deprived "of any rights, privileges, or immunities secured by the Constitution and laws" against the person causing the deprivation. *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) teaches that in any ac-

tion brought under § 1983 the first step is to identify a specific constitutional deprivation. Certainly the fourth and fourteenth amendments grant to Mrs. Day the right to be free of injury caused by a deputy sheriff while she is lawfully standing behind the counter of her grocery store. As the court noted in *Shillingford v. Holmes*, 634 F.2d 263 (5th Cir.1981):

> Physical abuse by police under color of state law may in some circumstances constitute a constitutional deprivation allowing recovery of damages under Section 1983. *Jones v. Hildebrant*, 432 U.S. 183, 189, 97 S.Ct. 2283, 2287, 53 L.Ed.2d 209, 214 (1977) (White, J., dissenting); *Jenkins v. Averett*, 424 F.2d 1228 (4th Cir.1970). The right to be free of state-occasioned damage to a person's bodily integrity is protected by the fourteenth amendment guarantee of due process. *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir.1980). The right has also been premised on the fourth amendment guarantee of "[T]he right of . . . people to be secure in their persons," made applicable to the state by the fourteenth amendment. *Jenkins v. Averett*, 424 F.2d at 1232.

634 F.2d at 265.

The evidence in this case is undisputed that Deputy Lea did not actively desire to cause harm to Mrs. Day; he was barely aware of her presence, and his counsel, in brief, puts forward the proposition that since the force was not intentionally directed at the innocent bystander, there can be no federal cause of action under § 1983. In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the court held that section 1983 did not provide a cause of action against law enforcement officers who thought that plaintiff was a shoplifter and circulated his photograph to merchants with the information. The defendant finds comfort in Justice Rehnquist's dictum:

> If respondent's view is to prevail, a person arrested by law enforcement officers who announce that they believe such person to be responsible for a particular crime in order to calm the fears of an aroused populace, presumably obtains a claim against such officers under § 1983. And since it is surely far more clear from the language of the Fourteenth Amendment that "life" is protected against state deprivation than it is that reputation is protected against state injury, it would be difficult to see why the survivors of an innocent bystander mistakenly shot by a policeman or negligently killed by a sheriff driving a government vehicle, would not have claims equally cognizable under 1983.

424 U.S. at 698, 96 S.Ct. at 1159.

■ Defendant misapprehends the meaning of *Paul v. Davis*, as well as the reach of § 1983. Counsel seizes upon the above dictum as meaning that no innocent bystander can ever state a claim under § 1983 for negligent injury by a police officer. While not conceding the soundness of that position, *see Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (liability under 1983 not dependant on state of mind of the actor but upon the result of the act); *Howard v. Fortenberry*, 728 F.2d 712 (5th Cir.1984) ("No particular state of mind is required to state a cause of action under § 1983 for violation of fourteenth amendment rights; negligence will suffice."); *Popow v. City of Margate*, 476 F.Supp. 1237 (D.N.J.1979) (presenting the precise situation posed by defendant—survivors of innocent bystander negligently shot to death by police officer pursuing a person he thought was a kidnapper held to have a 1983 action against the police officer), it is clear that more than mere negligence is involved in this case. It is well-established that gross negligence or recklessness or callous indifference to the harm inflicted is actionable under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Parker v. McKeithen*, 488 F.2d 553 (5th Cir.), *cert. denied*, 419 U.S. 838, 95 S.Ct. 67, 42 L.Ed.2d 65 (1974).

■ Here Deputy Lea attempted to arrest Mrs. Porter without a warrant and for no lawful cause, apparently because some of her strawberry drink was spilled upon him. This is not a case where a law enforcement officer in the course of making a

lawful arrest accidentally causes injury to an innocent bystander.[2] The facts of this case are that Deputy Lea attempted to unlawfully arrest Mrs. Porter outside of Mrs. Day's store, that Mrs. Porter broke and ran into the store seeking sanctuary, that Deputy Lea charged into the store behind her, and that in his single-minded determination to physically abuse her with his "slapjack," he directly caused the injuries to Mrs. Day. Compare Deputy Lea's actions here with those of the police officer in *Lynn v. City of New Orleans Department of Police*, 567 F.Supp. 761 (E.D.La. 1983). Surely § 1983 fits this case like a glove. Deputy Lea, acting under color of state law and, in the course of depriving Mrs. Porter of her liberty in violation of the fourth and fourteenth amendments, also recklessly and with complete disregard of the consequences of his unlawful actions, caused physical injury to Mrs. Day in violation of her rights under those same amendments. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Schillingford v. Holmes*, 634 F.2d 263 (5th Cir.1981); *Parker v. McKeithen*, 488 F.2d 553 (5th Cir.), *cert. denied*, 419 U.S. 838, 95 S.Ct. 67, 42 L.Ed.2d 65 (1974).

Deputy Lea is clearly liable to Mrs. Day under § 1983.

■ Plaintiff also seeks recovery against Sheriff Bridges upon the notion that Deputy Lea was inadequately trained and released upon the public. The evidence does not support such a finding, and since there is no respondeat superior liability under § 1983 there is no liability upon the sheriff. *See Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).

■ This brings us to the question of damages. Mrs. Day has not sustained a severe injury, although she did undergo a frightening experience which caused physical injury to her and she was deprived of rights secured to her under the Constitution by at least gross negligence and the recklessness of Deputy Lea. Her medical expenses total $183.00; she was seen by her physicians about seven times, and she suffered semi-regular physical pain for six months or so with some residual at the time of trial. Her neurosurgeon, however, expected full recovery with no permanent aggravation of her arthritic condition. For her physical injuries and pain and suffering, she is entitled to an award of $5,000.

■ For violent deprivation of her right to be free of state imposed physical injury while peacefully minding the store, she is entitled to an award of $10,000.

■ Plaintiff has prayed for punitive damages, in addition to compensatory damages. Such damages are available in a proper case under § 1983, and a proper case is made out when the defendant's conduct involves reckless or callous indifference to the plaintiff's federally protected rights, as well as when it is motivated by evil motive or intent. *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). The evidence here clearly justifies punitive damages.[3] The very purpose of an award for punitive damages is, as the term implies, to punish the defendant for his egregious conduct as well as to discourage him and others like him from any repeat performances. *Smith v. Wade*, 103 S.Ct. at 1639. Mrs. Day is entitled to punitive damages against Deputy Lea in the amount of $10,000.

■ As the prevailing party in this § 1983 action, Mrs. Day is also entitled to an award for attorney fees under 42 U.S.C. § 1988. Counsel for plaintiff shall, within ten days, submit the information required

---

**2.** Even if Deputy Lea had been making a lawful arrest for the misdemeanor of pouring strawberry drink on a deputy sheriff, the evidence in this case demonstrates unnecessary and abusive force. To attack an unarmed woman with a "slapjack" in callous disregard of the potential for injury to Mrs. Day, when the simple alternative of calling for additional help or even of waiting Mrs. Porter out was available, is outrageous conduct in itself.

**3.** Deputy Lea's obdurate attitude is well illustrated by his insistence that he did not hit Mrs. Porter too hard "because I didn't knock her down."

by *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), so that an appropriate award for attorney fees may be calculated.

There will be judgment herein in favor of plaintiff, Mrs. Day, and against the defendants, Deputy Lea and American Druggists Insurance Company, in the amount of $15,000 compensatory damages and an additional $10,000 in punitive damages together with interest according to law. There will be judgment in favor of Sheriff Bridges dismissing the action against him.