Joseph ESPOSITO

v.

Joseph BUONOME et al.

Civ. No. N–82–93(MJB).

United States District Court,
D. Connecticut.

Oct. 9, 1986.

See also 642 F.Supp. 760.

John R. Williams, Williams & Wise, New Haven, Conn., for plaintiff.

Hugh Keefe, New Haven, Conn., for defendants.

## RULING ON MOTION TO DISMISS PENDENT STATE CLAIMS

BLUMENFELD, Senior District Judge.

Plaintiff, Joseph Esposito, brought this action under 42 U.S.C. § 1983 and state tort law for an alleged excessive use of force by various individual members of the East Haven police force during his arrest on July 26, 1979. The defendants filed a motion to dismiss plaintiff's pendent state claims on the grounds of possible jury confusion. Neither party has requested a hearing on this motion, so it has been resolved on the basis of the papers.

### Discussion

In *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court indicated that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Id.* at 726, 86 S.Ct. at 1139. It is justified

by "considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims...." *Id.* A court should exercise its discretion so as to avoid "[n]eedless decisions of state law." *Id.* In addition, "there may be reasons independent of jurisdictional considerations, such as the likelihood of jury confusion in treating divergent legal theories of relief, that would justify separating state and federal claims for trial" and refusing pendent jurisdiction. *Id.* at 727, 86 S.Ct. at 1139. *See also Moor v. County of Alameda,* 411 U.S. 693, 712 (1973).

There is a likelihood of jury confusion in this case because of differences between state and federal law as to liability, as to the availability and calculation of punitive damages, and as to the award of attorney's fees. Each of these will be considered separately.

### I. *Standards for Liability*

 Under the Connecticut law of torts, a police officer may be liable for use of excessive force in the course of an arrest if the amount of force used was in excess of that which the officer reasonably believes to be necessary. *See Restatement (Second) of Torts* § 132 (1965); *see also Martyn v. Donlin,* 151 Conn. 402, 411 (1964) (officer not liable for death of a suspect if force used was amount he reasonably believed necessary under the circumstances); *cf.* Conn.Gen.Stat.Ann. § 53a–22 (1985) (use of force reasonably believed to be necessary to effect an arrest is a defense to criminal liability). Thus, the officer may be liable if he did not believe the amount of force was necessary, or if his belief was unreasonable under the circumstances.

 The federal civil rights law provides for a different standard of liability. A police officer's use of force only deprives an individual of liberty without due process if the conduct is so excessive that it "shocks the conscience." *Johnson v. Glick,* 481 F.2d 1028, 1032 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38

L.Ed.2d 324 (1973). To meet this standard, the offending conduct "must do more than 'offend some fastidious squeamishness or private sentimentalism about combatting crime too energetically'; [it] must be such as 'to offend even hardened sensibilities,' or constitute force that is 'brutal' and 'offensive to human dignity.'" *Id.* at 1033 n. 6 (citations omitted). In deciding whether conduct "shocks the conscience," one should consider "the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 1033.

Thus, even though federal law looks to the same factors as the common law in deciding whether police conduct was excessive, liability under federal law requires more than mere common law battery or a "push or shove, even if it may later seem unnecessary." *Id.* at 1033. *See Brudney v. Ematrudo,* 414 F.Supp. 1187, 1191 (D.Conn.1976) (Connecticut tort law provides for a greater duty of care by police officers than does federal constitutional law); *Travers v. Paton,* 261 F.Supp. 110, 112 (D.Conn.1966) (constitutional violation requires more than proof of a tort by a state actor); *see also McClary v. O'Hare,* 786 F.2d 83, 88 (2d Cir.1986) (misuse of governmental authority must transcend bounds of ordinary tort law to establish deprivation of constitutional rights); *Shillingford v. Holmes,* 634 F.2d 263 (5th Cir. 1981) (some police misuse of force may amount to a tort without rising to the level of a constitutional violation); *Williams v. Kelley,* 624 F.2d 695 (5th Cir.1980) (protection of federal rights is "far less extensive than that afforded by the common law of battery and negligence"), *cert. denied,* 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 391 (1981).

### II. *Punitive Damages*

Connecticut and federal law also differ on the availability and measurement of pu-

nitive damages. Under Connecticut law, so-called "punitive damages" may be awarded if the conduct showed "reckless indifference to rights of others or an intentional and wanton violation of those rights." *Vandersluis v. Weil,* 176 Conn. 353, 358 (1978); *Collens v. New Canaan Water Co.,* 155 Conn. 477, 489 (1967). These damages are limited to the "costs of litigation, less taxable costs," *Vandersluis,* 176 Conn. at 358, and must be determined by the trier of fact on proof of litigation expenses, *id.* at 359; *see also Gagne v. Town of Enfield,* 734 F.2d 902, 904–05 (2d Cir.1984). The purpose of such damages is "not to punish the defendant for his offense, but to compensate plaintiff for his injury." *Tedesco v. Maryland Casualty Co.,* 127 Conn. 533, 538 (1941).

 Federal law is similar to Connecticut law in that punitive damages are available on proof of "evil motive or intent" or "reckless or callous indifference" to another's rights, but federal law requires that the right violated be one *"federally* protected." *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1982) (emphasis supplied). Thus, for an award of federal punitive damages there must be a predicate finding that a federal right was violated, and a finding of evil intent or callous disregard in the violation of *that right.* Though intentional battery may justify the award of punitive damages under state law, federal law requires more; the defendant must intentionally take action which shocks the conscience. In other words, to justify federal punitive damages the conduct must be intentionally brutal, not just intentionally excessive. If such proof is provided, punitive damages may be awarded "in the jury's discretion 'to punish [the defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future.'" *Id.* at 54 (quoting *Restatement (Second) of Torts* § 908(1)); *see also Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 269 (1980) (punitive damages against officials advance the public's interest in preventing repeated constitutional violations).

### III. *Attorney's Fees*

Connecticut and federal law additionally differ with respect to the award of attorney's fees. Connecticut law generally does not allow the award of attorney's fees absent a statutory or contractual provision for their award, *State v. Bloomfield Construction Co.,* 126 Conn. 349, 359 (1940), or without proof necessary for so-called punitive damages, *Vandersluis,* 176 Conn. at 358–59. Federal law, through 42 U.S.C. § 1988, generally provides for the award of attorney's fees to plaintiffs who are successful in actions brought under section 1983. *Gagne v. Town of Enfield,* 734 F.2d 902, 904 (2d Cir.1984); *Kerr v. Quinn,* 692 F.2d 875, 877 (2d Cir.1982). The determination of the proper amount of such an award under section 1988 is for the court, not the jury. 42 U.S.C. § 1988; *see also Gagne,* 734 F.2d at 904.

### IV. *Effect of the Differences*

The effect of these differences between federal and Connecticut law is to confuse the jury at several stages of their deliberations. Initially, there is a risk that the jury will be confused by the different standards of liability. Though both Connecticut and federal law look to similar factors, liability under section 1983 requires a finding that the use of force be more than what the officer reasonably believes necessary; it must be so excessive that it "shocks the conscience." This difference, as presently articulated, has been difficult even for courts and commentators to spell out. *See* Wells & Eaton, *Substantive Due Process and the Scope of Constitutional Torts,* 18 Ga.L.Rev. 201, 234–36 (1984) (hard to distinguish constitutional torts from common law torts under the "shocks the conscience" test). It is a subtle difference of degree which is "more easily stated than applied." *Martin v. Covington,* 541 F.Supp. 803, 804 (E.D.Ky.1982) (finding allegations that police forced plaintiff to engage in homosexual solicitation stated a cause of action under § 1983). Therefore, it is likely that a jury of ordinary citizens

would find it difficult to distinguish instructions on the common law and federal claims and would be confused.

This probable confusion as to liability is further complicated by the differences between Connecticut and federal law on punitive damages and attorney's fees. Federal law is more generous, but first requires that a *federal* right be violated. Connecticut law is more restrictive, allowing punitive damages only to the extent of attorney's fees upon proof of the requisite intent. It would be difficult for a jury to keep these different standards separate and distinct, and instructing a jury on both probably would be confusing.

Because these pendent state claims would seriously complicate this case and would probably confuse the jury, it is appropriate to dismiss the state claims. *Cf. Moor v. County of Alameda*, 411 U.S. 693, 716–17, 93 S.Ct. 1785, 1799, 36 L.Ed.2d 56 (1973) (district court did not abuse discretion in dismissing pendent state claims in § 1983 action on the grounds that they involved difficult questions of state law and would unduly complicate the case); *Gonzalez v. Doe*, 476 F.2d 680, 686 (2d Cir.1973) (proper dismissal of pendent state claims against a city in a § 1983 action where the dismissal avoided interpretation of state statutes, application of different standards of liability under state law which could confuse the jury, and possible prejudice because of the jury's knowledge that the city would indemnify other defendants).

## V. *Comity Concerns*

Although it is generally in the interest of justice to avoid jury confusion, avoiding such confusion in this case also is in the interest of comity between the federal and state systems. If the jury applies the law improperly, it may impinge on important state and federal interests. For instance, there is a federal interest in excluding mere common law torts from the scope of generous section 1983 remedies available for constitutional violations. *See Parratt v. Taylor*, 451 U.S. 527, 549, 101 S.Ct. 1908, 1919, 68 L.Ed.2d 420 (1981) (Powell, J.,

concurring) (allowing § 1983 actions for negligence by state officials would trivialize the federal remedy); *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1975) (fourteenth amendment through § 1983 is not a "font of tort law to be superimposed" on the states). The Supreme Court has refused to extend section 1983 remedies to claims such as those for mere false imprisonment by a state official, *Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979), for defamatory statements by a state actor, *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1975), for negligent infringement of liberty, *Daniels v. Williams*, —— U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and for negligent loss of property, *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). If the jury were to improperly find a constitutional violation though only a state right had been violated, a federal interest would be impaired because a simple tort violation would result in the more comprehensive constitutional remedy. The possibility of such an improperly applied, more expansive remedy is one reason for dismissing pendent state claims. *Cf. Elliot v. Employers Reinsurance Corp.*, 534 F.Supp. 690, 692 (D.Kan.1982) (pendent state claims dismissed because, among other things, allowing a state claim with more expansive remedy and different standard of liability might predominate over the federal issues in the trial and confuse the jury).

Moreover, once a constitutional violation has been found, instructing the jury on both the federal and state claims could impair federal interests in the availability of punitive damages and attorney's fees. As noted above, punitive damages in section 1983 actions are to punish and deter constitutional violations. Yet if the jury improperly limited the award of punitive damages to legal expenses, as under Connecticut law, this purpose of punitive damages might be limited or undermined, which is a result that should be avoided. *Cf. Jones v. Hildebrant*, 432 U.S. 183, 190–

91, 97 S.Ct. 2283, 2287–88, 53 L.Ed.2d 209 (1977) (White, J., dissenting) (state limitations on damages that do not serve policies underlying § 1983 should not limit those remedies).

A similar result could occur with regard to attorney's fees. Attorney's fees are generally available to successful civil rights plaintiffs under 42 U.S.C. § 1988 "to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." *Kerr v. Quinn,* 692 F.2d 875, 877 (2d Cir.1982). But if the jury in its confusion decides to award attorney's fees only on the showing of an intentional, wanton or reckless violation of the plaintiff's rights, then some meritorious cases of similarly situated plaintiffs may not be pursued.

State interests could also be impaired by possible jury confusion in this case. Connecticut has decided as a matter of policy that punitive damages in their common form, as a means to punish and deter offenders, should not be allowed in Connecticut because they do more than compensate the injured party. Rather than allowing plaintiffs a windfall from the award of punitive damages, Connecticut courts have restricted so-called punitive damages to legal expenses in order to justify such damages within the framework of compensatory damages. *See Hanna v. Sweeney,* 78 Conn. 492, 494–95 (1906). If the jury were to mistakenly award federal punitive damages for a violation of a state right, then this interest in the limitation of punitive damages would be impaired. A similar interest, the federal interest in limiting access to punitive damages, has justified dismissing state claims. *See Van Hoomissen v. Xerox Corp.,* 368 F.Supp. 829, 840 (N.D. Cal.1973) (court refused to hear pendent state claims for emotional distress because it would allow litigation of punitive damages, which would be inconsistent with, and beyond scope of, plaintiff's Title VII claim).

Connecticut also has an interest in restricting the availability of awards for attorney's fees. The Connecticut courts have determined that equal access to the courts requires that the losing party in an honest dispute should not be "punished by being compelled to pay not only his own counsel but such as the [opposition] may please to select." *St. Peter's Church v. Beach,* 26 Conn. 354, 366–67 (1857). Thus, attorney's fees are available as part of damages only when it is not an "honest" dispute; that is, when the tortious conduct was recklessly indifferent to plaintiff's rights, or intentionally or wantonly disregarded them. *See Vandersluis v. Weil,* 176 Conn. 477, 489 (1978). The possible jury confusion in this case could impair this state interest if the jury fails to award attorney's fees when they are deserved, or awards them merely because plaintiff was successful.

### *Conclusion*

The pendent state claims considered here raise standards of liability and damages that differ from federal standards. Instructing the jury on both the state and federal standards would unduly complicate this case and result in jury confusion in resolving those issues of liability and damages. This complication and confusion, combined with the possible impairment of state and federal interests underlying the difference in the standards, persuades the court that it should exercise its discretion to dismiss the pendent state claims.

SO ORDERED.