John BAFFA, Executor of the Estate of
Alfred J. Baffa, Jr., Deceased,

v.

James BLACK, Joseph O'Neill and
City of Philadelphia.

Civ. A. No. 79–813.

United States District Court,
E. D. Pennsylvania.

Nov. 13, 1979.

Francis Recchuiti, Norristown, Pa., for plaintiff.

Paul R. Sacks, Asst. City Sol., Philadelphia, for defendant.

**1084**

POLLAK, District Judge.

The questions at issue relate to the sufficiency of the complaint filed by John Baffa against three defendants—Joseph Black, a police officer of the City of Philadelphia; Joseph O'Neill, the Police Commissioner of Philadelphia; and the City of Philadelphia. The defendants, all of whom are represented by the City Solicitor, have moved to dismiss the complaint on two grounds: (1) that the complaint fails to state a cause of action against any of the defendants; (2) that, in any event, plaintiff lacks standing to sue on any of the asserted causes of action.

## I.

The plaintiff is executor of the estate of Alfred J. Baffa, Jr. According to the complaint, the decedent met his death in the following way:

At about 3:00 A.M. on June 8, 1978, Baffa was driving west on the Schuylkill Expressway. Officer Black, in a patrol car, began to follow Baffa on the Expressway, and continued in pursuit when Baffa left the Expressway and headed home to Bala Cynwyd. When Baffa entered his driveway, parked, and got out of his car, Black was there. Baffa asked Black to leave. Instead of leaving, Black, without presenting a warrant or offering any justification, drew his revolver and commenced to search Baffa, who was unarmed. There was a struggle during which Black hit Baffa several times with his revolver and then shot him through the head and neck, fatally wounding him.

On the basis of these allegations (at this stage of the case, unproved but assumed *arguendo* to be true), Baffa's executor has brought suit against Black, Commissioner O'Neill and the City, alleging causes of action arising under the Civil Rights Act of 1871—specifically, 42 U.S.C. § 1983—and also pendent state-law causes of action under Pennsylvania's Wrongful Death and Survival Acts.

## II.

Assuming plaintiff's standing to sue (which will be considered hereafter, in Part III of this Opinion), the question to be addressed is the sufficiency of the complaint. The answer to that question varies as among the three defendants.

■ The paragraphs of the complaint summarized above clearly allege the commission by defendant Black both of constitutional wrongs embraced by Section 1983 of Title 42 and of Pennsylvania torts covered by the Wrongful Death and Survival Acts.

■ The allegations against defendant O'Neill are far less precise. They are, in gist, that O'Neill did not provide adequate training for Black, and also that O'Neill's laxity in enforcing "the laws of the Commonwealth of Pennsylvania and the regulations of the Philadelphia Police Department pertaining to the use of . . . deadly force by Philadelphia Police Officers creat[ed] . . . an atmosphere and attitude of lawlessness and vigilantism in which police officers commonly employ excessive and illegal force in the belief that such conduct will be condoned by their superiors." In order to bring the controversy into sharper focus at trial, greater detail would certainly be helpful. Nonetheless, these allegations sufficiently attribute to O'Neill accountability for Black's alleged misconduct so as to state with respect to O'Neill a cause of action under Section 1983 —and, accordingly, pendent state causes of action as well.

■ The situation with respect to defendant City of Philadelphia is somewhat more complicated. The City Solicitor argues that the complaint tries—albeit unsuccessfully—to set forth federal causes of action against the City both under Section 1983 and under the Fourteenth Amendment. Plaintiff's counsel, in his answering memorandum, does not undertake to sustain the federal cause of action against the City on any statutory basis, whether Section 1983 or otherwise; entire reliance is put on the Fourteenth Amendment. What-

ever anomaly there may be in the fact that plaintiff views his claim more narrowly than defendants do, the fact is that the complaint as now drawn, whichever way it is read, does not state a federal claim (and hence states no pendent state claims) against the City. This is so for the following reasons:

The Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), overruling *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), holds that a municipality is a "person" within the meaning of Section 1983 and hence suable thereunder. However, the narrow ground-rules of municipal suability laid down by *Monell* —that a city is liable under Section 1983 only on proof that the unconstitutional conduct complained of was pursuant to declared municipal policy, or at least to "custom" effectively accepted as municipal policy—are not met by any of the allegations relating to the City of Philadelphia contained in this complaint.

Since *Monell* has thus broadened Section 1983 so as to make it an apt statutory instrument for vindicating, as against municipalities, infringements of constitutional rights committed by municipal employees within the ambit of what may fairly be characterized as municipal policy, there appears no reason for plaintiffs to continue to invoke an essentially indistinguishable Fourteenth Amendment claim. *Monell* has made redundant the remedial palliative—an implied constitutional cause of action against municipalities, patterned after *Bivens v. Six Unknown Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1972)—which had seemed calculated to fill an important constitutional need during the era of *Monroe v. Pape*. *Jones v. City of Philadelphia*, 481 F.Supp. 1053 (E.D.Pa.1979).

Accordingly, the complaint as it stands does not state a claim against the City; and an order will therefore be entered dismissing the City as a party defendant, albeit without prejudice to the filing of an amended complaint within thirty days if plaintiff can in good faith allege a legally viable cause of action against the City.

## III.

As noted above, the complaint, in setting forth claims arising out of the death of Alfred J. Baffa, Jr., asserts claims under the Civil Rights Act of 1871 (Section 1983) and also pendent claims under Pennsylvania's Wrongful Death and Survival Acts. Defendants urge, however, "that this action to redress the violation of personal rights does not survive the death of the holder of those rights, except under a Survival Act," wherefore, "the cause of action under the Civil Rights Act and Wrongful Death Act of Plaintiff, John Baffa, in his own right, should be denied and dismissed as to the Defendants."

It has of course been well established for many years that a cause of action arising under a federal civil rights statute does not die with the victim of the alleged constitutional wrong, provided that the relevant state law provides for the survival of causes of action belonging to the decedent. ". . . [I]t defies history to conclude that Congress meant to assure to the living freedom from such unconstitutional deprivations, but that, with like precision, it meant to withdraw the protection of civil rights statutes against the peril of death." *Brazier v. Cherry*, 293 F.2d 401, 404 (5th Cir. 1961), *cert. denied*, 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961).

Without, so it would seem challenging the rule of *Brazier v. Cherry, supra*, defendants seem to be making the point that John Baffa can maintain this lawsuit only in his representative capacity—i. e., as the executor of the decedent's estate—and not "in his own right." To the extent that defendants are asserting that the death which befell Alfred J. Baffa, Jr., vests no federal claim in John Baffa as an individual, whatever John Baffa's relationship to Alfred J. Baffa, Jr. may have been, defendants are on sound ground. So much is evident from *Strickland v. City of Easton*,

Civ. 75–93 (E.D.Pa.1976), relied on by defendants, wherein Judge Fullam concluded that Sarah Strickland had no personal claim under Section 1983 for the death of her son. *Accord, Denman v. Wertz,* 372 F.2d 135 (3d Cir. 1966), *cert. denied,* 389 U.S. 941, 88 S.Ct. 300, 19 L.Ed.2d 293 (1967). However, Judge Fullam's opinion is also square authority for the proposition that under Pennsylvania law decedent's mother "as administratrix of the decedent's estate, undoubtedly had standing and capacity to maintain both the civil rights action and the pendent state claims under the Wrongful Death and Survival Acts." *Strickland v. City of Easton, supra.* And so it follows that John Baffa had like standing and capacity to initiate this lawsuit—provided that he is suing by virtue of his status as executor of the decedent's estate.

The question, in short, is whether there is any basis for defendants' characterization of this lawsuit as one which John Baffa is in some measure pursuing "in his own right." The answer—as a reading of the complaint makes plain—is no. Accordingly, since John Baffa is suing as executor, and only as executor, he is fully entitled to maintain this lawsuit.

### IV.

An order will enter granting the motion to dismiss of the City of Philadelphia (but without prejudice to the timely filing of an appropriately amended complaint) and denying the motions to dismiss of Officer Black and Commissioner O'Neill.