Samuel AGRESTA, Sr., Tina Agresta, Plaintiffs,

v.

Gregore SAMBOR, individually and as Police Commissioner, et al., Defendants.

Civ. A. No. 86–7358.

United States District Court, E.D. Pennsylvania.

Jan. 28, 1988.

Joseph F. Lawless, Jr., Philadelphia, Pa., for plaintiffs.

Ralph J. Teti, Chief Deputy, Litigation, City of Philadelphia, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

DITTER, District Judge.

In this civil rights action, plaintiffs seek damages for the termination of their relationship with their married, adult son, allegedly killed by the police. Defendants move to dismiss on the grounds that the complaint fails to state a claim for which relief can be granted. For the reasons that follow, I will deny defendants' motion.

Plaintiffs aver that their son was chased, shot, and killed by Philadelphia police officers. Plaintiffs contend they had a constitutionally protected interest in their parental relationship which was completely extinguished by the unlawful acts of the defendants. Plaintiffs had maintained close emotional ties with their son, spoke with him daily, and visited him frequently. Their son was also an employee in their business. Even though decedent was married,[1] his relationship with his parents intensified due to his "marital estrangements" with his wife.

Plaintiffs also allege that defendants did not undertake a complete investigation and conspired to cover up the circumstances of their son's death. These actions deprived plaintiffs of their right to redress the violation of their constitutional rights.

█ In their motion to dismiss, defendants assert that in this circuit parents of a married, adult child do not have a constitutionally protected right to companionship or association regardless of how close parents and child may be.

The courts of appeals are split on whether parents can recover in a civil rights action for the deprivation of their right to association or relationship with an adult child. *Compare Strandberg v. City of Helena,* 791 F.2d 744 (9th Cir.1986) (parent can recover); *Trujillo v. Board of County Commissioners,* 768 F.2d 1186 (10th Cir. 1985); *Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir.1984) *with Harpole v. Arkansas Dept. of Human Services,* 820 F.2d 923 (8th Cir.1987) (parent does not have a protectable interest); *Ortiz v. Burgos,* 807 F.2d 6 (1st Cir.1986). Even among the courts that have recognized this right, there is disagreement over its constitutional underpinnings. Most courts hold that a

parent's right to association and companionship with a child is a substantive due process right, *e.g., Bell, supra;* however, the Tenth Circuit has concluded that this right arises from the first amendment right to freedom of intimate association. *Trujillo, supra.*

In support of their position that a parent has no constitutional right to companionship with an adult son in this circuit, defendants rely on several district court decisions: *See Gann v. Schramm,* 606 F.Supp. 1442 (D.Del.1985); *Baffa v. Black,* 481 F.Supp. 1083 (E.D.Pa.1979); *Strickland v. City of Easton,* No. 75–93 (E.D.Pa. Oct. 27, 1976). These decisions are exemplified by the following statement in *Baffa:*

> To the extent that the defendants are asserting that the death that befell Alfred J. Baffa, Jr., vests no federal claim in John Baffa as an individual, *whatever John Baffa's relationship to Alfred J. Baffa, Jr. may have been, defendants are on sound ground.*

481 F.Supp. at 1085 (emphasis added). These cases rely on a Third Circuit holding that a father who unlawfully took his children from their mother failed to plead a deprivation of his constitutional rights when state officials returned the children to her. *Denman v. Wertz,* 372 F.2d 135 (3d Cir.) (per curiam), *cert. denied,* 389 U.S. 941, 88 S.Ct. 300, 19 L.Ed.2d 293 (1967).

Only one reported decision in this district has held that a parent can seek redress for a total deprivation of the parental relationship, *Jones v. McElroy,* 429 F.Supp. 848 (E.D.Pa.1977) (Luongo, J.). In *Jones v. McElroy,* the court concluded that *Denman* was distinguishable because there the father did not have lawful custody and was not completely deprived of the parental relationship.[2]

---

1. Though not pleaded in the complaint, decedent was also survived by two children. In their motion to dismiss, defendants assert that decedent's wife brought a wrongful death action in state court on her own behalf and as representative of decedent's estate, and on behalf of their children. Plaintiffs do not dispute this.

2. In *Gann,* the court distinguished *Jones v. McElroy* as limited to where the parent has lawful custody of a minor child. The opinion in

*Jones v. McElroy,* however, does not indicate whether the child was a minor. Moreover, Judge Luongo expressly stated, "[I]n taking the children, the police did not deprive Denman of any right. That situation is simply inapposite to the total deprivation of parental rights caused by death in the instant case." 429 F.Supp. at 853. Moreover, the court dismissed the claim of the parent of a minor child who was not

These cases all preceded the Third Circuit's decision in *Estate of Bailey by Oare v. County of York,* 768 F.2d 503 (3d Cir. 1985). In *Bailey,* a father sought damages for termination of his constitutional rights caused by the death of his child. The court's opinion focused on the circumstances in which a public agency or official has a duty to protect individuals who are not in their custody; however, the court did recognize the father's liberty interest "in preserving the life and safety of his child from deprivations caused by state action. . . ." *Id.* at 509 n. 7. The court continued

> [we] follow the Seventh Circuit's decision in *Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir.1984), in holding based on these precedents that a parent whose child has died as a result of unlawful state action may maintain an action under § 1983 for the deprivation of liberty. *Id.* at 1242–45, 1251–53.

*Id.* In light of *Bailey,* the *Bell* decision, not the prior district court decisions in this circuit, reflects Third Circuit law on parents' constitutional right to companionship and association with their children.

In *Bell,* the court held that a father of an adult son could recover under section 1983 for the total destruction of the parental relationship. The parent's right encompasses his " 'interest in the companionship, care, custody, and management' of the child." *Bell,* 746 F.2d at 1245 (quoting *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)). The court refused to place limitations on the parental relationship based on the child's age or lack of residential status with the parent.[3] The court reasoned that while relative to the amount of damages, the child's age and residence "were not a bar to any recovery at all." *Bell,* 746 F.2d at 1245.

Defendants argue that this case is distinguishable from *Bell* because plaintiffs' son was married at the time of his death. In *Bell,* the court did note that decedent was single and had not become part of another family unit; however, there is no indication that the marital status of the child is controlling notwithstanding the nature of his relationship with his parents. Here, plaintiffs allege they maintained a close and loving relationship with their son, particularly because of his marital difficulties. While decedent's being married may affect the intensity of the relationship, and thus, recoverable damages, it does not completely destroy the parents' constitutional right. As noted by the Supreme Court, the interest of a parent in the companionship, care, custody, and management of children has high respect. *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *see also Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (natural parents desire for and right to companionship is an interest more precious than any property right). It would be contrary to a human experience to suggest that a parent's interest in the society and companionship of his child suddenly disappears when the child marries.[4]

In light of the Third Circuit's approval of *Bell,* I conclude that, as with his age and residential status, a son's marriage does not extinguish his parents' right to recover for the complete elimination of their relationship with him. *See also Trujillo v. Board of County Commissioners,* 768 F.2d 1186 (10th Cir.1985) (parents have a first amendment right of intimate association with married, adult child); *Doty v. Carey,* 626 F.Supp. 359 (N.D.Ill.1986) (right

killed because there was not a complete deprivation of the parent-child relationship.

3. At the time of his death, decedent resided in Milwaukee, Wisconsin, while his father resided in Louisiana.

4. In *Smith v. City of Fontana,* 818 F.2d 1411 (9th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987), the court considered the right to companionship of children, including adult children, with their father. In concluding

that the children have a cognizable liberty interest, the court emphasized that the right to companionship is premised on the familial relationship, not on a custodial interest or right to parent a minor child. *Id.* at 1419. This decision supports the conclusion that a parent's constitutional rights are based on the familial relationship between parents and children which is not wholly extinguished by changes in the family structure.

to parental relationship with married, adult son).[5]

Defendants also argue that plaintiffs should not be permitted to recover under 42 U.S.C. § 1983 because they would not be entitled to recover under the Pennsylvania Wrongful Death Statute, 42 Pa. Cons.Stat.Ann. § 8301.

Under Pennsylvania law, recovery for loss of services, society, and companionship are elements of recovery in a wrongful death action. *See Linebaugh v. Lehr*, 351 Pa.Super. 135, 505 A.2d 303 (1986). In a wrongful death action, parties entitled to recovery are compensated for the pecuniary losses caused by the wrongful death. *See Slaseman v. Myers*, 309 Pa.Super. 537, 549, 455 A.2d 1213, 1220 (1983). In *Slaseman*, the court identified the following damages as recoverable in a wrongful death action,

compensation for the loss of the contributions decedent would have made for such items as shelter, food, clothing, medical care, education, entertainment, gifts and recreation. The widow is also entitled to the pecuniary value of the services, society and comfort she would have received from decedent.

*Id.* at 549, 455 A.2d 1220.[6]

A parent is entitled to recover under section 8301(b), but damages are distributed according to law of intestacy. 20 Pa. Cons.Stat.Ann. § 2101 et seq. (Purdon 1975 and Supp.1987). Under section 2103, a parent is not entitled to recover in intestacy where decedent is survived by a spouse and children. 20 Pa. Cons.Stat.Ann. § 2103. Consequently, plaintiffs here could not recover under the Pennsylvania Wrongful Death Statute.

Consideration of state law is appropriate in a civil rights action only in accordance with 42 U.S.C. § 1988[7] which requires a three step analysis:

1. Whether there is controlling federal law;

2. If there is none, then possible application of state law; and

3. Whether the state law in question would be inconsistent with the laws of the United States and the Constitution. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985).

Two policies that underlie section 1983 are the compensation of persons injured by deprivation of their federal rights and deterrence of abuses of power by persons acting under color of state law. *Robertson v. Wegmann*, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978); *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). These purposes, are promoted when a person is compensated for the actual damages caused by the deprivation of constitutional rights. *Carey*, 435 U.S. at

**5.** For the same reasons, decedent's status as a father does not affect his parents' constitutional right.

**6.** Moreover, the Pennsylvania Supreme Court has stated that in a wrongful death action, a parent may recover "funeral and medical expenses, plus the total earnings which would have been earned by the child up to age 21, minus the cost of maintaining the child during that period...." *Sinn v. Burd*, 486 Pa. 146, 151–52 n. 3, 404 A.2d 672, 675 n. 3 (1979).

**7.** Section 1988 of Title 42 provides:

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this Title, and of Title "CIVIL RIGHTS," and of Title "CRIMES," for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as

such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty. In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

254, 98 S.Ct. at 1047. Here, even though there is no controlling federal law and there is a state statute that might be considered to control, its application would conflict with these underlying federal purposes.

First, the goal of the Pennsylvania Wrongful Death Statute is to compensate survivors for the *pecuniary* losses caused by the wrongful death. The right to recover identified in *Bell* is based on the *emotional* ties between the parent and child, not their pecuniary losses. Thus, recovery under Pennsylvania's wrongful death statute does not provide an appropriate means for measuring the damage that results from a termination of the parent-child relationship. *See Doty v. Carey, supra. See also Jones v. Hildebrant,* 432 U.S. 183, 97 S.Ct. 2283, 53 L.Ed.2d 209 (1977) ("the underlying § 1983 claim—deprivation of a right to raise children—is not all the same underlying claim for which the wrongful-death action provides recompense.... it [a section 1983 claim] would not seem logically to be subject to a damages limitation contained in the statute permitting survivors to recover for wrongs done to a property interest of theirs."). Moreover, it is doubtful that a parent is entitled to any recovery for loss of companionship. *See Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979).

Second, I have already pointed out that a parent's emotional ties with his child are not snuffed out because the child is married or has children.[8] Thus, it would be inconsistent with the goal of actual compensation to preclude a parent's recovering damages caused by a deprivation of his constitutional rights because the state's wrongful death statute precludes recovery. In accord with *Carey v. Piphus,* parents who have a constitutional right to a parental relationship and have suffered actual losses from the complete deprivation of that right should be compensated for their loss regardless of the laws of intestacy. In *Robertson v. Wegmann,* the Supreme Court held that a state survival law that required abatement was not inconsistent with the goal of compensation since it only affected the rights of those suing as an executor. 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978). The Court noted that its decision did not preclude the right of a survivor to sue for injury to his own constitutional interests. *Id.* at 592 n. 9, 98 S.Ct. at 1996 n. 9.

Finally, the goal of deterring unlawful conduct is hopefully furthered by permitting recovery to those who have suffered significantly as a result of a deprivation of their constitutional rights.

Moreover, while I am compelled to consider application of the state wrongful death statute in light of the analysis of state wrongful death laws by the court in *Bell* and the subsequent approval of this analysis by the Third Circuit in *Bailey,* I have reservations about doing so in light of *Jones v. Hildebrant, supra,* and *Robertson v. Wegmann, supra.*

In *Jones v. Hildebrant,* the Supreme Court dismissed certiorari as improvidently granted. The question initially presented by petitioner was whether a damage limitation in a wrongful death statute was applicable to a section 1983 claim brought by a mother on her own behalf arising from her son's death. During oral argument, however, counsel for petitioner shifted the focus of her claim by asserting that her loss was not the pecuniary loss caused by her son's death; but rather, it was the loss resulting from the deprivation of her personal liberty. The Court dismissed certiorari because this question was not raised in the lower courts. The Court did note that wrongful death statutes are designed to compensate pecuniary losses and thus are akin to a property tort action. A claim based on a deprivation of the mother's liberty rights, however, was "not for any 'property loss,' but, rather, for the right of a child's mother to raise the child as she sees fit." 432 U.S. at 186, 97 S.Ct. at 2285. Thus, the Court intimated that it would be

---

8. Realistically, grandchildren may cause the ties between parents and their children to be rekindled or intensified.

inappropriate to apply the wrongful death statute to a claim for a violation of the mother's constitutional rights. Similarly, in *Robertson,* the Court noted that a state survival statute would not affect the claim of a survivor for injury to his own constitutional rights.

Here, plaintiffs seek compensation for their personal injuries, for their loss of society and companionship, losses that are for emotional damages they have suffered. *Doty v. Carey,* 626 F.Supp. 359 (N.D.Ill. 1986); *see also Wilson v. Garcia,* 105 S.Ct. at 1948 (section 1983 claims are generally characterized as personal injury claims). The Pennsylvania Wrongful Death Statute is designed to compensate survivors for their pecuniary losses, *Slaseman v. Myers, supra,* those that are akin to property losses. Thus, this statute should not be applied, as a matter of law, to preclude recovery for the deprivation of the parents' constitutional right to companionship with their adult, married child.

■ Plaintiffs also alleged that defendants conspired to cover-up the circumstances of their son's death which deprived them of their right of access to the courts. *See Ryland v. Shapiro,* 708 F.2d 967 (5th Cir. 1983). Access must be "adequate, effective, and meaningful" and more than mere entry to the courts is required. *Bounds v. Smith,* 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977); *Bell, supra.* This cause of action requires plaintiffs to have an underlying claim which they could not bring because their access to the courts was denied. Because I conclude that plaintiffs have stated a claim based on a deprivation of their right to companionship and parental association, they may maintain their claim based on a denial of their right of access to the courts.

■ Plaintiffs have also brought a claim for intentional infliction of emotional distress under Pennsylvania law. Because the threshold for surviving a motion pursuant to Fed.R.Civ.P. 12(b)(6) is "very low" I will not grant defendants' motion to dismiss the claim for intentional infliction of emotional distress. I note, however, that the standard of outrageous conduct necessary for this claim is extremely high and in all likelihood subject to disposition on a motion for summary judgment. *Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81 (3d Cir.1987).

■ In conclusion, I hold that parents of an adult, married child may bring an action for the complete deprivation of their right to companionship. This decision is based on the reasoning of the Seventh Circuit in *Bell v. City of Milwaukee,* the alleged close relationship between plaintiffs and decedent, the constitutional protections afforded the parent-child relationship, and the complete extinguishment of this relationship by the alleged unconstitutional actions of the defendants. This opinion should not be read to suggest a cause of action beyond these limits exists.

## ORDER

AND NOW, this 28th day of January, 1988, upon consideration of defendants' motion to dismiss the amended complaint and for the reasons stated in the accompanying memorandum, it is hereby ordered as follows:

1. Defendants' motion to dismiss counts I–V is denied.

2. Defendants' motion to dismiss count VI is denied.

3. The Police Department of the City of Philadelphia is dismissed as a defendant.

4. The stay on discovery imposed by my order dated March 20, 1987, is lifted and the parties are permitted to resume discovery.