Samuel AGRESTA, Sr., et al.

v.

The CITY OF PHILADELPHIA, et al.

Civ. A. No. 86–7358.

United States District Court,
E.D. Pennsylvania,
Civ.Div.

Aug. 11, 1992.

E. Harris Baum, Zarwin & Baum, P.C., Philadelphia, Pa., for plaintiffs.

David A. Soltz, City of Philadelphia, Law Dept., Philadelphia, Pa., for defendants.

## MEMORANDUM

BARTLE, District Judge.

This civil rights lawsuit arises out of the fatal shooting of Samuel Agresta, Jr. by Philadelphia Police Officer James Gillespie after a high speed automobile chase through South Philadelphia on December 19, 1985.

Samuel Agresta, Sr. and Tina Agresta, the parents of Samuel Agresta, Jr., sought damages for the termination of their relationship with their married, adult son under 42 U.S.C. § 1983.[1] The Agrestas alleged that the use of excessive force against their son denied them their constitutional right to familial association with him, and that the subsequent investigation of his death caused the denial of their constitutional right of access to the courts. The named defendants to this action were Gregore Sambor and Kevin Tucker, successive Police Commissioners of the City of Philadelphia; Philadelphia Police Officers Thomas Fitzpatrick and James Gillespie; Detective Alexander Doman; Police Lieutenant Gerald Baker; and the City of Philadelphia.

The defendants filed a Motion to Dismiss on April 13, 1987 challenging the standing of the plaintiffs, as parents of the decedent, to institute an action. On January 28, 1988, Judge J. William Ditter, Jr. of this

---

1. Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ...

42 U.S.C. § 1983.

Court denied the Motion to Dismiss. *See Agresta v. Sambor, et al.,* 687 F.Supp. 162 (E.D.Pa.1988). Thereafter, the defendants filed a Motion for Judgment on the Pleadings attempting to reargue the right of the Agrestas to bring a civil rights action under 42 U.S.C. § 1983 for the death of their son. The undersigned, to whose calendar the case was transferred in 1991, denied the defendants' Motion for Judgment on the Pleadings based on the prior decision of Judge Ditter.

The case was tried before a jury in February and March 1992. At the close of plaintiffs' evidence, the defendants moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure.[2] This Court granted the motion as to former Police Commissioners, Gregore Sambor and Kevin Tucker, but denied the remainder of the motion. The defendants renewed their motion for judgment as a matter of law at the conclusion of all the evidence. At that point, this Court granted judgment in favor of defendant Lt. Gerald Baker on all excessive force claims and in favor of the remaining defendants on the pendent state claim for intentional infliction of emotional distress.

The case was submitted to the jury on special interrogatories. The jury returned a verdict in favor of Police Officers Fitzpatrick and Gillespie, Detective Doman and the City of Philadelphia on all excessive force claims. The jury, however, found the City of Philadelphia liable to the plaintiffs, in the amount of $825,000, because of the City's policy, procedure or custom, or lack of policy or procedure, which resulted in the denying the Agrestas access to the courts.

After the jury's verdict, the City timely moved for judgment as a matter of law, pursuant to Rule 50 of the Federal Rules of Civil Procedure, on two grounds: (1) the plaintiffs as parents of the decedent did not have a constitutionally protected liberty interest in the companionship of their adult, emancipated and married child; and (2) the plaintiffs' proof at trial in support of their claim of unconstitutional denial of access to the federal courts was fatally deficient.

The Agrestas, likewise, filed timely post-trial motions for judgment as a matter of law, or, in the alternative, for a new trial on the verdict rendered in favor of the defendants, Gillespie, Fitzpatrick, and Doman on the excessive force issue. They argued that this verdict was contrary to the weight of the evidence. Plaintiffs also sought a new trial on additional grounds: (1) the Court erred in granting defendants' Motion for Judgment as a Matter of Law on the claims against Lt. Gerald Baker before the jury was given an opportunity to consider his liability; and (2) the Court erred in refusing to instruct the jury on the issue of the City of Philadelphia's policy, procedure or custom, or lack of a policy or procedure, with respect to setting up or using police stake-outs or stake-out units, of which Officers Fitzpatrick and Gillespie and Detective Doman were a part.

## I. *The Plaintiffs' Post Trial Motions*

■ The Agrestas seek a new trial as to the defendant Lt. Baker on the ground that they produced sufficient evidence to bring the issue of Lt. Baker's liability for excessive force to the jury. Rule 59(a) of the Federal Rules of Civil Procedure provides, in part, that

> A new trial may be granted to all or any of the parties and on all or part of the issues (1) in any action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States....

Fed.R.Civ.P. 59(a). The determination to grant a new trial is committed to the sound discretion of the district court. *Bonjorno v. Kaiser Aluminum and Chemical*

---

**2.** The City's briefs refer to "judgment as a matter of law," while plaintiffs' papers refer to "judgment notwithstanding the verdict." Recent amendments to Rule 50 of the Federal Rules of Civil Procedure resulted in abandonment of the nomenclature of "judgment notwithstanding the verdict" or judgment n.o.v. Rule 50 now provides for judgment as a matter of law in actions tried by jury. However, this change in nomenclature has not altered the standard a court must apply in deciding a motion made pursuant to Rule 50.

*Corp.,* 752 F.2d 802, 812 (3d Cir.1984). Nonetheless, a new trial will not be granted merely because the court would have weighed the evidence differently and reached a different conclusion. Courts have ordered a new trial when "the verdict [was] against the clear weight of the evidence; ... the trial was unfair; and .... substantial errors were made in the admission or rejection of evidence or [in] the giving or refusal of instructions." *Northwest Women's Center, Inc. v. McMonagle,* 689 F.Supp. 465, 468 (E.D.Pa.1988) *citing* 11 C. Wright & Miller, Federal Practice and Procedure § 2805 (1971). The District Court, however, may not substitute its judgment for that of a jury on the issues of credibility of witnesses. *Williamson v. Consolidated Rail Corp.,* 926 F.2d 1344, 1352 (3d Cir.1991).

Lt. Baker, of the Philadelphia East Detective Division, became involved in this tragic series of events on December 19, 1985 when he interviewed Thomas Spurka, an individual who had had a business relationship with Samuel Agresta, Jr. Spurka had reported to the police that he feared for his safety because of physical threats made against him by Agresta earlier that day. Lt. Baker arranged for the deployment of a stake-out unit in order to apprehend Agresta. He first sent the stake-out unit,[3] accompanied by a 25th District Burglary Team, to the Halfway House Tavern parking lot at 3940 "G" Street where Spurka was to meet Samuel Agresta, Jr. However, the scheduled meeting location was changed to the Oregon Diner at 3rd and Oregon Streets. Lt. Baker sent the stake-out unit to that location to await Agresta's arrival. He did not accompany the unit.

The Court granted Lt. Baker's Motion for Judgment as a Matter of Law at the close of all the evidence in the case for two reasons: (1) there was no evidence that Lt. Baker was personally involved in the use of excessive force against Samuel Agresta, Jr; and (2) Lt. Baker was not a policymaker with the City of Philadelphia. *See Monell*

*v. New York City Dept. of Social Services,* 436 U.S. 658, 693–94, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).

The Agrestas argue that Baker knew that the stake-out unit is a specially trained and armed unit that is used for extraordinary operations. According to the Agrestas, Baker's decision to deploy the unit was inherently a decision to use excessive force, and, as a supervisor, he is liable for any excessive force used.

■ The evidence at trial demonstrated that Gerald Baker ranked relatively low in the chain of command at the Police Department and was not a policymaker. This Court had determined that Police Commissioner Gregore Sambor[4] was the relevant policymaker, not Lt. Baker. The identification of the officials whose decisions constitute the official policy of the local government unit is a legal question to be resolved by the trial judge before the case is submitted to the jury. *Jett v. Dallas Independent School District,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Simmons v. City of Philadelphia,* 947 F.2d 1042, 1062 (3d Cir.1991). The Court finds no reason to alter its determination.

■ Plaintiffs' argument that Lt. Baker is responsible for the use of excessive force by the stake-out unit is without merit. He did not order weapons to be used against Samuel Agresta, Jr. He was not involved in any way when the police officers first confronted Agresta at 3rd and Oregon in South Philadelphia, nor did Baker participate, either in person or by radio, in the high speed automobile chase which ended with the fatal shooting of Samuel Agresta, Jr. on Delaware Avenue. While Baker made the decision to deploy the stake-out unit that evening, any liability as a supervisor for the unit must be based on his own acts or omissions, not those of the individual officers in the stake-out unit. *Respondeat superior* is not a basis for a supervisor's liability under § 1983. *Monell v. New York City Dept. of Social Services,* 436

---

3. The stake-out unit consisted of Officers Fitzpatrick and Gillespie and Detectives Alexander Doman and William McCloskey.

4. The plaintiffs agreed to the dismissal of Gregore Sambor from the case.

U.S. 658, 693–94, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); *Jett v. Dallas Independent School District,* 491 U.S. at 735, 109 S.Ct. at 2722. This Court holds, as a matter of law, that Gerald Baker was not responsible for the use of any excessive force against Samuel Agresta, Jr. In any event, since the jury exonerated Detective Doman and Officer Fitzpatrick as well as Officer Gillespie, who actually killed Samuel Agresta, Jr., on the use of excessive force, it could not have found Lt. Baker liable for excessive force.

In support of their argument that a supervisor is liable for conduct or inaction amounting to a reckless or callous indifference to the constitutional rights of others, the Agrestas cite *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 562 (1st Cir. 1989). This reliance is misplaced. In *Gutierrez–Rodriguez,* the driver of an automobile, who was injured when shot by police officers in a rounds squad[5], sued the officer in charge of the squad, others in the squad, the officer's supervisor, and the police chief for civil rights deprivation. Plaintiffs draw an analogy between the supervisor in the *Gutierrez–Rodriguez* case, who was found liable, and Gerald Baker. However, in *Gutierrez–Rodriguez* the supervisor was a friend of Officer Soto, the officer in charge of the squad, and had knowledge of Soto's character and Soto's propensity for violence. The supervisor, who had the authority to assign Soto to a desk job, had continued to send Soto out as a squad supervisor despite a number of complaints that had been filed about Soto, and also had the responsibility of evaluating the officers in the squads. The court in *Gutierrez–Rodriguez* found that the supervisor's position, responsibilities and conduct not only demonstrated reckless or callous indifference to the constitutional rights of others, but also was affirmatively linked to the officer's misconduct. 882 F.2d at 562. Here, while Gerald Baker called for and deployed the stake-out unit, there was no evidence that Baker was responsible for supervising and disciplining the individual

members of the unit or that he had authority to reassign members of the unit. The plaintiffs have not produced any evidence that Lt. Baker's conduct demonstrated reckless or callous indifference to the constitutional rights of others and have not provided an affirmative link between Baker's conduct and the alleged misconduct of the officers at the stake-out.

■ The plaintiffs also filed a motion for judgment as a matter of law on the issue of the excessive force allegedly used by the individual police officers and Detective Doman against Samuel Agresta, Jr. The Agrestas, however, did not move for a judgment as a matter of law at the conclusion of their case nor at the conclusion of all the evidence. Federal Rule 50 provides, in pertinent part, that:

(a) ... (2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the facts on which the moving party is entitled to the judgment. (b) ... Whenever a motion for a judgment as a matter of law made at the close of all the evidence is denied or for any reason not granted, the Court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion....

The Court cannot enter judgment as a matter of law unless the moving party sought such judgment at the close of all the evidence at trial. *Yohannon v. Keene Corp.,* 924 F.2d 1255, 1262 (3d Cir.1991); *Keith v. Truck Stops Corp. of America,* 909 F.2d 743, 744 (3d Cir.1990). By failing to do so, the Agrestas are now barred from seeking judgment as a matter of law on the issue of the use of excessive force by the police officers and Detective Doman.

■ The Agrestas, argue, in the alternative, that the jury verdict which found that Officers Fitzpatrick and Gillespie and Detective Doman did not use excessive force

5. The squad was one assigned to do "preventive rounds." The purpose of such rounds was to go to places where drugs were being trafficked and

to intervene in such trafficking. 882 F.2d at 557.

against Samuel Agresta, Jr. should be vacated and a retrial on this issue granted. Plaintiffs urge this Court to grant a new trial because of conflicts in the testimony. Detective Doman, and Police Officers Buchanico, Fitzpatrick and Gillespie all testified that the decedent fired upon the police while other witnesses either did not hear or see shots or testified that the decedent fired no shots. The Agrestas point to testimony of expert and lay witnesses that decedent fired no shots from inside of the decedent's vehicle but rather that all shots came from the police firing into his vehicle. Moreover, no weapon belonging to Samuel Agresta, Jr. was ever found on the decedent, in his car, or along the chase route.

The City's evidence, if believed by the jury, established that Samuel Agresta, Jr. had fired first at the police officers from his vehicle. The evidence included the testimony of Detective Doman that Samuel Agresta, Jr. struck Doman with his Cadillac while the police stake-out unit was waiting for decedent in a parking lot at 3rd and Oregon Streets and that decedent fired shots at Doman. After Agresta headed out of the parking lot, an off-duty police officer, Anthony Buchanico, testified that he observed the early portion of the chase on Oregon Avenue and saw the report and muzzle flash of shots being fired from within the Agresta Cadillac. Officers Fitzpatrick and Gillespie, who had been waiting for Agresta in their police car in the parking lot area, also testified. They described the shots the decedent fired at them, as they pursued Agresta. The chase proceeded from Oregon Avenue through the narrow streets of South Philadelphia at extremely high rates of speed, ending tragically on the northbound side of Delaware Avenue above Washington Avenue. There, according to these Officers, the decedent, still in his vehicle, appeared to be turning and raising his arm, preparing to fire back at them when Officer Gillespie inflicted the fatal shot. There was testimony about contemporaneous police radio broadcasts of shots being fired at the police, and the jury heard the radio tapes themselves. Although no gun of the decedent was ever found, the evidence established there was opportunity for decedent to discard it out of the window of his vehicle while out of sight of the police car chasing him. While the jury certainly could have reached a different result from the conflicting evidence, its decision in favor of the police officers clearly was not against the weight of the evidence. We will not disturb the jury's verdict.

The Agrestas also seek a new trial based on this Court's refusal to charge the jury on the City's policy, procedure or custom, or lack of policy or procedure, with respect to setting up and using stakeout units. This motion is without merit. Failing to instruct the jury as requested does not constitute error so long as the instructions, taken as a whole, properly apprises the jury of the issues and applicable law. *Gutzan v. Altair Airlines, Inc.*, 766 F.2d 135, 138 (3d Cir.1985). The constitutional deprivation at issue in this case was the right of the decedent, Samuel Agresta, Jr., to be free of excessive force under the color of law. This Court charged the jury and provided special interrogatories[6] on whether the City had an unconstitutional policy, procedure or custom, or lack of policy or procedure, with respect to the use of deadly force. The alleged excessive force was the causal connection between the defendants' actions and the death of Samuel Agresta, Jr., not the existence and deployment of the stakeout unit. *See City of*

---

**6.** The special interrogatories provided:

    1. Did the City of Philadelphia have a policy, procedure or custom, or lack of policy or procedure, which constituted deliberate indifference in the training of any, or all, of the individual defendants, Detective Alexander Doman, Sergeant Thomas Fitzpatrick, or Police Officer James Gillespie, such that it was the proximate cause of injury to and the death of Samuel Agresta, Jr.? ...

    3. Did the individual defendants, Detective Alexander Doman, Sergeant Thomas Fitzpatrick, and Police Officer James Gillespie, or any one of them, unreasonably use excessive force on the night of December 19, 1985, which was the proximate cause of injury to and the death of Samuel Agresta, Jr.?

*Canton v. Harris,* 489 U.S. 378, 391, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412 (1989).

Even without an instruction on the stake-out unit, plaintiffs have not contested the Court's charge on the applicable law regarding the excessive force claim. In answering the special interrogatories, the jury found there was no excessive force used. Whatever the City's policy or lack of policy with respect to stake-out units, without a finding of excessive force, there is no constitutional deprivation of the decedent's rights with respect to the use of stake-out units.

## II. The Defendant City of Philadelphia's Post-Trial Motions

█ The City, as set forth above, has also filed post-trial motions. The City has first moved for judgment as a matter of law on the ground that the Agrestas do not have a constitutionally protected liberty interest in the companionship of their adult and married child. This Court will deny the motion. The City raised this issue earlier before Judge Ditter who concluded that the Agrestas did, in fact, possess a constitutional right of familial association with their son. *Agresta v. Sambor, et al.,* 687 F.Supp. 162 (E.D.Pa.1988). Judge Ditter, relying on the Court of Appeals decision in *Estate of Bailey by Oare v. County of York,* 768 F.2d 503 (3d Cir.1985),[7] held that parents have a substantive due process liberty interest in the companionship of a son, even though an adult and married.

The City revived this argument in their Motion for Judgment on the Pleadings of September 1991. The City relied on the Supreme Court's decision in *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) for the proposition that there are no substantive due process rights found in 42 U.S.C. § 1983 and that the Agrestas had no basis on which to bring their claims. This Court denied this motion. Defendants raised the issue again on the eve of trial by filing a Motion for Summary Judgment. Again, this Court denied their motion. This is the third time the City has raised the issue following Judge Ditter's original decision. The City has provided no new case law to convince this Court to overrule its previous decisions. We will not overrule the decision made by another judge sitting in the same court and in the same case. *See Hayman Cash Register Co. v. Sarokin,* 669 F.2d. 162, 168–70 (3d Cir.1982).[8]

Finally, the City has moved for judgment as a matter of law with respect to the $825,000 jury verdict in favor of the Agrestas on their claim of denial of access to the courts. The jury answered affirmatively special interrogatory no. 2:

Did the City of Philadelphia have a policy, procedure or custom, or the lack of a policy or procedure which resulted in the denial of the constitutional right of access to the courts, to the plaintiffs, Samuel and Tina Agresta?

The City contends that the Agrestas' proof at trial in support of their claim of unconstitutional denial of access to the federal courts was deficient as a matter of law. In ruling on a motion for judgment as a matter of law, the Court must determine whether the evidence and justifiable inferences most favorable to the prevailing party afford any rational basis for the verdict. *Berndt v. Kaiser Aluminum and Chemical Sales, Inc.,* 789 F.2d 253, 258 (3d Cir. 1986). The court must view the evidence in

**7.** The *Bailey* court followed the Seventh Circuit's decision in *Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir.1984) in holding that a parent whose child has died as a result of unlawful state action may maintain an action under § 1983 for this deprivation. 768 F.2d at 509 n. 7.

**8.** While an exception to this "law of the case doctrine" exists when a new rule of law is valid and applicable to the issues of the case, *see Hayman,* 669 F.2d at 170, this Court does not find that *Graham v. Connor* forbids the Agres-

tas' action. In *Graham,* the Court held that when an excessive force claim is brought under § 1983, the specific constitutional right affected must be identified. Here, while the Agrestas alleged that the individual defendants used excessive force against Samuel Agresta, Jr., Judge Ditter found their relief rested on their constitutional right to familial association and their right to access to the Courts, rights found in the First and Fourteenth Amendments to the United States Constitution. Neither of these rights was addressed by the Court in *Graham.*

the light most favorable to the nonmoving party. *Gay v. Petsock*, 917 F.2d 768, 771 (3d Cir.1991).

The right of access to the courts is a fundamental right which has three constitutional underpinnings. The first is the privileges and immunities clauses of Article 4 and the Fourteenth Amendment of the Constitution.[9] The second is the right to petition for redress of grievances found in the First Amendment,[10] and the third is the Due Process Clause.[11] *Ryland v. Shapiro*, 708 F.2d 967, 971–72 (5th Cir. 1983). Interference with the right of access to the courts is actionable under 42 U.S.C. § 1983. *Ryland, supra* at 972. Access to the courts must be "adequate, effective and meaningful." *Bounds v. Smith*, 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984).

A decedent's survivors may bring an action for denial of access to the courts where the estate of the deceased person has a valid cause of action and where the wrongdoers act to prevent the prosecution of the claim. *Bell v. City of Milwaukee*, 746 F.2d at 1261. This Court has determined that the Agrestas can bring an action based upon their substantive due process liberty interest in the companionship of their adult child. *See Agresta v. Sambor*, 687 F.Supp. 162 (E.D.Pa.1988).

The Agrestas need to prove that the City interfered with their ability to bring this claim to court in order to sustain their claim for unconstitutional denial of access to the courts. The Agrestas have sued only the City on this claim but not any individual defendants. The Agrestas may not sue the City, however, under § 1983, based on a *respondeat superior* theory, for an injury inflicted solely by the City's employees or agents. *Monell v. Dept. of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037. The Agrestas must present scienter-like evidence of indifference, which may include reckless indifference, by the policymakers. *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1060–61, n. 14, *reh'g denied*, (3d Cir.1991) (en banc), *cert. denied*, —— U.S. ——, 112 S.Ct. 1671, 118 L.Ed.2d 391 (1992).[12] The Agrestas must prove more than negligence on the part of the City and its policymakers in order to sustain their claim of unconstitutional denial of access to the courts.[13] They must establish that the City deprived them of their constitutional right either through City policy which affirmatively deprived

---

**9.** Article 4 provides that "the Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." Art. 4, Sec. 2, cl. 1. The Fourteenth Amendment provides, in part, that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States...."

**10.** "Congress shall make no law ... abridging the right of the people to peaceably assemble, and to petition the Government for a redress of grievances."

**11.** "No person shall be ... deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

**12.** The *Simmons* case was heard by Chief Judge Sloviter and Judges Becker and Weis. Judge Becker wrote the opinion in which Judge Sloviter concurred. Judge Weis dissented. In her concurrence, Judge Sloviter acknowledged that more than negligence was needed to subject a municipality to § 1983 liability. However, she disagreed with Judge Becker's requirement that plaintiffs produce "scienter-like evidence" as that requirement may impose a heavier burden on plaintiffs than mandated by the Supreme Court or by prior decisions of the Third Circuit. 947 F.2d at 1089. Judge Sloviter would only require that plaintiffs prove that the defendants acted recklessly or with deliberate indifference. 947 F.2d at 1092.

**13.** At oral argument on these motions, the Agrestas argued that callous disregard is all that is required to find the City liable on the denial of access claim. Defendants argued that intentional acts by policymakers are required. Whichever standard should apply, all parties recognized that the Agrestas must prove more than mere negligence to sustain this claim.

them of the right or through the City's acquiescence to longstanding practice or custom. *See Simmons,* 947 F.2d at 1062.

Two courts have addressed denial of access claims brought against local government actors in cases which provide useful comparisons here.

In *Ryland v. Shapiro,* 708 F.2d 967, 972 (5th Cir.1983), a local prosecutor murdered his girlfriend and conspired with the District Attorney and an Assistant District Attorney to declare the death a suicide and to prevent a full investigation into the causes of the woman's death. The conspiracy denied the parents of the decedent an opportunity to pursue a death claim under the Louisiana Civil Code. Courts have read the *Ryland* decision to support the proposition that state officials may commit a constitutional violation if (1) they wrongfully and intentionally conceal information crucial to a person's ability to obtain redress through the courts; (2) they do so for the purpose of frustrating that right; and (3) concealment and delay substantially reduce the likelihood of one's obtaining the relief to which one is otherwise entitled. *Crowder v. Sinyard,* 884 F.2d 804, 812 (5th Cir.1989).

In *Bell v. City of Milwaukee,* 746 F.2d 1205, 1261 (7th Cir.1984), a police officer planted a knife upon the decedent whom the officer shot and conspired with other police officials and the district attorney to concoct a self-defense justification. This conspiracy was not exposed until twenty years later when the partner of the shooter confessed. This conspiracy "rendered hollow" the right of decedent's father to seek redress under either the Wisconsin wrongful death law or federal civil rights law. 746 F.2d at 1261. The *Bell* Court distinguished its case from cases where plaintiffs alleged that law enforcement officials were lax or negligent in their investigatory duties. *Bell,* 746 F.2d at 1261–62 (citing *Scolnick v. Winston,* 219 F.Supp. 836, 841 (S.D.N.Y.1963); *Jackson v. City of Joliet,* 715 F.2d 1200 (7th Cir.1983); and *Beard v. O'Neal,* 728 F.2d 894 (7th Cir.1984)).

The Agrestas sought to impose direct liability on the City, unlike the plain-tiffs in *Ryland* and *Bell* who sued individual defendants whose misconduct denied them meaningful access to the courts. To counter the City's motion for judgment as a matter of law, the Agrestas point to evidence they say establishes that the City by its policies, procedures or customs, or lack of policy or procedure, concealed the circumstances of their son's death and denied the Agrestas meaningful access to the courts.

The City had no Police Department directives in place regarding the investigation of officers who discharge their weapons or any specific directive in place setting forth the exact procedures to be followed in instances of police shootings and homicides, although there was a general police directive on limiting the use of deadly force. Moreover, Police Officers Staunton and Philipp, who were on the scene at Delaware Avenue where Samuel Agresta, Jr. was fatally shot by Officer Gillespie, gave statements to homicide investigators in the presence of each other approximately one hour after the shooting. These two officers were responsible for bringing the decedent to the hospital following the shooting. The Agrestas contend that the homicide investigator's taking of Officers Staunton and Philipp's statements together allowed opportunity for the officers to collaborate on their stories and evidenced a lack of a constitutional investigative policy on the part of the City.

The Agrestas also rely, in support of their claim of deprivation of their right of access to the courts, on evidence showing that the law enforcement authorities investigating the shooting failed to take the statements of Officers Gillespie and Fitzpatrick until more than four months after the incident. The Agrestas allege this delay enabled the shooting officers to collaborate with other witnesses to conform their statements and also led to stale evidence and the fading of material facts from the minds of witnesses.

The Agrestas also cite evidence that they received a letter from John Herron of the Philadelphia District Attorney's Office, dated June 23, 1986, which stated no decision

had yet been made as to whether the officers involved in the incident would be prosecuted. In the meantime, however, Officer Gillespie, who fatally shot Samuel Agresta, Jr., and Officer Fitzpatrick, who was involved in the chase, had finally given written statements on May 1, 1986 and May 6, 1986. According to the Agrestas, John Herron's June 23, 1986 letter confirms that the Police Department had no policy to delay Officers' statements until the District Attorney's Office completed its investigation or that the District Attorney's Office and the City were somehow involved in a deception of the Agrestas. The Agrestas rely on these events as further support of their claim that the City denied them access to the courts through an investigation laden with delay and opportunities for cover-up and collaboration among those Officers involved in the shooting and those running the investigation.

Finally, the Agrestas remind the Court of evidence before the jury that the Police Department never obtained critical forensic evidence from the shooting. There were no barium and antimony tests done on the decedent to determine if he had in fact discharged a weapon, particularly since no gun was found on him or in his car; there was no chemical analysis performed on the interior of the decedent's car; and there was no attempt to inspect the scene at 3rd and Oregon to recover gun shells. The Agrestas also find support for their denial of access claim in the Police Department's failure to procure statements from many individual witnesses along the chase route or at the tragic finale on Delaware Avenue.

After viewing this evidence in the light most favorable to the Agrestas, the Court holds that the evidence does not afford a rational basis for the jury's verdict in favor of the Agrestas. *See Berndt v. Kaiser Aluminum and Chemical Sales, Inc.,* 789 F.2d 253, 258 (3d Cir.1986). As stated above, the Agrestas did not sue any individuals for concealing evidence or otherwise denying them their constitutional right of access to the Court. Plaintiffs have only sued the City itself. Even assuming the

City, through its policymakers, desired to conceal the true facts of Samuel Agresta Jr.'s death, the Agrestas have not proven by a preponderance of the evidence that the City, through its policymakers, had a policy, procedure, custom, or lack of policy or procedure resulting in the denial of the Agrestas' constitutional right of access to the courts.

While Officers Staunton and Philipp gave statements together to homicide investigators following the shooting, the statements were taken very soon after the incident, so there was little opportunity to fabricate a version of the facts. In any event, the two were sequestered at the trial, testified separately, and did not give identical testimony. While allowing them to give statements together may not be the best way to conduct an investigation and may constitute negligence, the evidence did not support a finding that taking the statements together was part of policy or a lack of policy leading to the denial of access to the courts. In fact, when Officers Gillespie and Fitzpatrick, who were involved in the stake-out and high speed chase of Samuel Agresta, Jr., gave their statements concerning the shooting, they gave them separately.

Police Department policy precluded Officers Gillespie and Fitzpatrick from giving statements until the District Attorney's Office completed an investigation as to whether it would prosecute the officers. This procedure had no nefarious purpose. If the District Attorney's Office decided to prosecute the officers, a statement given without *Miranda* warnings would be of no use and might prevent prosecution.[14] If the District Attorney's Office gave the officers the *Miranda* warnings on the ground that it was considering prosecuting them, it is highly unlikely the police officers would have given a statement. Here, both officers testified they wanted to give their statements immediately but did not to do so under instruction of counsel, provided to them by the Fraternal Order of Police, and directives of the investigating police officers. While the Agrestas put on testimony

---

**14.** *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct.  1602, 16 L.Ed.2d 694 (1966).

as to different procedures used by other police departments in investigating shootings by officers,[15] the mere existence of other investigative techniques does not make the Philadelphia Police Department's practice unconstitutional.

The Agrestas argued that the letter they received from John Herron was further evidence of an attempt to cover-up the facts and delay the Agrestas bringing suit. The Court finds this argument unpersuasive. The letter was sent to the Agrestas' attorney and is not evidence of communications between the District Attorney's Office and the Police Department as to the status of the investigation. There was no evidence that the investigating officers even knew why or when this letter was sent. The policy of waiting to take statements of shooting officers exists to give the District Attorney's Office time to investigate and determine whether criminal charges will be brought against officers; it is not designed either to assist or hinder lawsuits brought by civilians. Whether or not the District Attorney's Office here is the same as or a separate entity from the City, an issue that this Court need not decide for purposes of this case, Herron's letter does not support a finding that City policymakers had a policy, procedure or custom, or lack of policy or procedure, denying the Agrestas access to the Courts.

While the City may not have conducted certain forensic tests on the decedent when the autopsy was done on December 20, 1985, the body was released to the parents within three days. The Agrestas, in fact, had an independent autopsy done on December 24, 1985, five days after the shooting, although they themselves had none of these forensic tests done on the decedent's hands. Forensics experts testified that even had the Police Department conducted antimony and barium tests on the decedent's hand there was no guarantee that if

the decedent had fired a gun the tests would have revealed the presence of barium and antimony. As to the physical inspection of the shooting scene, although the City may not have inspected the parking lot at 3rd and Oregon Streets immediately after the incident, the scene on Delaware Avenue where Samuel Agresta, Jr. was shot to death was inspected.

The police may not have interviewed all potential witnesses to the incident; however, the Agrestas were not prevented from doing so. In fact, they did interview many and called them as witnesses, including the wife of Police Sergeant Anthony Buchanico who testified as to what she observed of the high speed chase and who contradicted her husband's testimony.

Here, the City never denied that officers shot Samuel Agresta, Jr. The interpretation of the events leading up to his death conflict, but that does not mean that any policy or lack of policy on the part of the City, through its policymakers, led to a cover-up of the truth about the death of Samuel Agresta, Jr. or denied the Agrestas access to the courts. The only policy that seemed to be in effect having any bearing on the issues here was that of refusing to interview the involved officers until after the District Attorney's Office investigated whether or not it would charge the officers with criminal conduct. This, however, does not rise to a level sufficient to impute liability to the City for denying the Agrestas access to the Courts. Nothing prevented the Agrestas from instituting this action and taking the depositions of the involved officers.

The Court finds that the Agrestas have not proven by a preponderance of the evidence anything more than negligence on the part of the City or its policymakers, even viewing the evidence in the light most favorable to the Agrestas. Negligence, of course is not sufficient to establish a claim

---

15. For example, one possible procedure to follow is to take the statement of the officers involved in a shooting and to preclude the use of that statement against the officers, should they be charged. However, investigators would not be prevented from using facts gathered from other aspects of the investigation against the officers. Such procedure may lead to the more timely taking of statements of shooting officers but it is questionable whether this leads to a more thorough and accurate investigation or whether a successful criminal prosecution of the officers involved could occur.

under 42 U.S.C. § 1983. *See Simmons v. City of Philadelphia*, 947 F.2d 1042 (3d Cir.1991). The evidence is insufficient to establish that policymakers demonstrated any deliberate indifference in the investigation of Samuel Agresta, Jr.'s death. There was no evidence that a lack of written directives on investigative procedure was a deliberate practice on the part of the City to hinder investigations. Errors, mistakes, and misjudgments may have occurred in the investigation. However, negligence by individuals investigating a shooting is not the same as callous disregard, deliberate indifference or intentional misconduct on the part of the City or its policymakers. The Agrestas have not proven that the City had a policy, procedure or custom, or lack of policy or procedure, intending to deny the Agrestas their constitutional right of access to the Courts. *Monell v. Dept. of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Simmons v. City of Philadelphia*, 947 F.2d 1042 (3d Cir.1991).

This Court finds the evidence insufficient to support the jury verdict in favor of the Agrestas on their claim of unconstitutional denial of access to the courts. The City's Motion for Judgment as a Matter of Law will be granted.